Teresa JOHNSON, Appellant,

v.

GANS FURNITURE INDUSTRIES, INC.; Hon. Irene Steen, Administrative Law Judge; Robert L. Whitaker, Director of Special Fund; Hon. Ben Chandler, Attorney General; and Workers' Compensation Fund, Appellees.

No. 2002–SC–0542–WC.

Supreme Court of Kentucky.

Sept. 18, 2003.

Wayne C. Daub, Louisville, Counsel for Appellant.

Timothy P. O'Mara, Middleton & Reutlinger, Louisville, Counsel for Appellee, Gans Furniture.

David W. Barr, Labor Cabinet—Special Fund, Frankfort, Counsel for Appellee, Special Fund.

## OPINION OF THE COURT

This appeal by a workers' compensation claimant asserts that the December 12, 1996, version of KRS 342.125(8) is unconstitutional and that it should not be applied retroactively to awards that were entered before its effective date. She maintains that by limiting the time for reopening an award that was entered before December 12, 1996, the provision deprives her of a

vested right to reopen at any time in violation of Sections 14, 54, and 241 of the Kentucky Constitution. She also maintains that the 1996 amendments to KRS 342.125 violate Section 59(24) because they treat workers and employers differently with respect to the right to reopen a final award and because they treat various groups of injured workers differently. Although our reasoning differs from that of the Court of Appeals, we affirm.

The claimant was injured in 1978 and settled her claim in 1982 for a lump sum that represented a 33.6% occupational disability. In October, 1994, she moved to reopen, but the motion was dismissed for lack of prosecution. On July 23, 2001, she again moved to reopen on the ground of a change of disability, submitting an affidavit in which she stated that a post-award worsening of her physical condition had caused her to become totally disabled. The motion was dismissed, however, on the ground that it was not filed before December 12, 2000. KRS 342.125(8). Affirming a decision by the Workers' Compensation Board, the Court of Appeals determined that the provision is constitutional.

As effective July 14, 2000, KRS 342.125 provides, in pertinent part, as follows:

(1) Upon motion by any party or upon an administrative law judge's own motion, an administrative law judge may reopen and review any award or order on any of the following grounds:

(a) Fraud;

(b) Newly-discovered evidence which could not have been discovered with the exercise of due diligence;

(c) Mistake; and

(d) Change of disability as shown by objective medical evidence of worsening or improvement of impairment due to a condition caused by the injury since the date of the award or order.

. . .

(3) Except for reopening solely for determination of the compensability of medical expenses, fraud, or conforming the award as set forth in KRS 342.730(1)(c)2., or for reducing a permanent total disability award when an employee returns to work, or seeking temporary total disability benefits during a period of an award, no claim shall be reopened more than four (4) years following the date of the original award or order granting or denying benefits, and no party may file a motion to reopen within one (1) year of any previous motion to reopen by the same party.

. . .

(8) The time limitation prescribed in this section shall apply to all claims irrespective of when they were incurred, or when the award was entered, or the settlement approved. However, claims decided prior to December 12, 1996, may be reopened within four (4) years of the award or order or within four (4) years of December 12, 1996, whichever is later, provided that the exceptions to reopening established in subsections (1) and (3) of this section shall apply to these claims as well.

Several aspects of the 1996 amendments to KRS 342.125 have been the subject of previous appeals to this Court. In *Meade v. Reedy Coal Co.*, Ky., 13 S.W.3d 619 (2000), the injuries that gave rise to the underlying claim occurred before December 12, 1996, and an award was entered before that date. At the time of the award, KRS 342.125 permitted reopening "at any time" upon the requisite showing. Effective December 12, 1996, KRS 342.125(3) and (8) were amended to prohibit the reopening of an award within two years of its entry (or of the party's previous motion to reopen), to limit the period of reopening to within four years of the

original award, and to limit the period for reopening previously-decided claims to within four years of December 12, 1996. The appeal concerned whether Mr. Meade was entitled to reopen his pre-December 12, 1996, award within two years of its entry.

In resolving the various arguments that were presented, the Court determined that KRS 342.125(8) expressed a clear legislative intent to limit the reopening of a pre-December 12, 1996, award to within four years of December 12, 1996, but did not reveal an intent for the two-year waiting period to govern the reopening of such awards. Therefore, because Meade's award was the product of a pre-December 12, 1996, settlement, the two-year waiting period did not apply. The award could be reopened upon the requisite proof at any time within four years of December 12, 1996.

In *Brooks v. University of Louisville Hospital,* Ky., 33 S.W.3d 526 (2000), we determined, however, that where an award for a pre-December 12, 1996, injury was entered after December 12, 1996, the two-year waiting period did apply. We also determined that the provision did not violate Section 4, 54, or 241 of the Kentucky Constitution and that because neither a worker nor an employer was permitted to reopen an award within two years upon an allegation of a change in disability, it did not violate Section 59(24). Subsequently, in *McCool v. Martin Nursery & Landscaping,* Ky., 43 S.W.3d 256 (2001), we rejected an argument that applying the provision to a pre-December 12, 1996, award violated Article 1, Section 10 of the United States Constitution or Sections 13, 19, and 242 of the Kentucky Constitution by depriving a worker of a vested property right. Our rationale for the decisions was that the right to be compensated for a post-award increase in disability was in-

choate until such time as the increase occurred. Where the increase occurred after December 12, 1996, the right to be compensated did not vest until after that date and, therefore, no vested right was affected by applying the two-year waiting period to the award.

■ As a general rule, the courts have held that the law in effect on the date of injury controls the rights and obligations of the parties. *See Maggard v. International Harvester Co.,* Ky., 508 S.W.2d 777 (1974). But unlike the provisions concerning the grounds for reopening that are found in KRS 342.125(1), the four-year limitation on reopening that is found in KRS 342.125(8) is a statute of limitation. *See Woodland Hills Mining, Inc. v. McCoy,* Ky., 105 S.W.3d 446 (2003). More accurately, KRS 342.125(8) is both a statute of limitation and repose because, by limiting the time for taking action, it may extinguish a cause of action before it arises. Although a statute of repose may not abolish or diminish the legal remedies for common-law causes of action for personal injuries or death that existed prior to the adoption of the 1891 Kentucky Constitution without violating Sections 14, 54, and 241, no such constraint exists with regard to a statutory cause of action such as workers' compensation. *Wright v. Oberle–Jordre Co., Inc.,* Ky., 910 S.W.2d 241 (1995). In fact, the very right to reopen what amounts to a final judgment by virtue of a post-judgment change of condition is a peculiarity of Chapter 342.

■ As we pointed out in *Brooks, supra,* and *McCool, supra,* limitations on the time for taking action relate to the remedy and may be enlarged or restricted without impairing vested rights. *See Stone v. Thompson,* Ky., 460 S.W.2d 809, 810 (1970). Although an amendment that extends the period of limitation may be applied to a claim in which the period has not

already run, it may not be applied to revive a claim that has expired without impairing vested rights. *See Beth–Elkhorn v. Thomas,* Ky., 404 S.W.2d 16 (1966); *Kiser v. Bartley Mining Co.,* Ky., 397 S.W.2d 56 (1965). Likewise, an amendment may not extinguish an existing cause of action by shortening the period of limitations to a time that has already run or is unreasonably short without impairing vested rights. In contrast, an amendment that leaves a reasonable time in which to assert a claim does not impair a vested right. *See Crawford v. V. & C. Coal Co.,* Ky., 432 S.W.2d 403 (1968).

The claimant's award was entered before December 12, 1996, at which time there was no limitation on the period for reopening. Although she did not file her latest motion to reopen until 2001, she asserts that her post-award worsening of physical condition occurred before December 12, 1996. On that basis, she maintains that her right to increased compensation vested before the amendment's effective date and that the amendment impaired her vested right to increased benefits.

Unlike her present appeal, the claimant's motion to reopen did not allege that her post-award worsening of condition occurred before December 12, 1996. In any event, it has long been established that a worker's right to benefits for a post-award increase in disability vests when a motion to reopen is filed, without regard to when the increased disability began. *Rex Coal Co. v. Campbell,* 213 Ky. 636, 281 S.W. 1039 (1926). Furthermore, even if the claimant's right to increased benefits had vested before December 12, 1996, KRS 342.125(8) afforded her a four-year period after December 12, 1996, in which to assert a right to increased compensation. Because we are persuaded that four years was a reasonable amount of time in which to require that an existing claim for

increased benefits be asserted or lost, we are not convinced that the amendment impaired a right to compensation that vested before December 12, 1996. *See Crawford v. V. & C. Coal Co., supra.*

KRS 342.125(8) provides that although claims decided before December 12, 1996, may be reopened within a period of four years after December 12, 1996, the "exceptions to reopening established in subsections (1) and (3)" apply to those claims as well as to claims decided later. KRS 342.125(1) does not characterize any ground for reopening as an "exception," but KRS 342.125(3) provides an exception to the four-year limitation where the purpose for reopening is to determine the compensability of medical expenses, to determine whether fraud has occurred, to conform the award as set forth in KRS 342.730(1)(c)2, to reduce a permanent total disability award in an instance where the injured worker returns to work, or to permit an injured worker to seek temporary total disability (TTD) benefits within the period of an award.

The claimant's final argument is that KRS 342.125(3) violates Section 59(24) of the Kentucky Constitution. She asserts that it permits employers to reopen at any time for a reduction in benefits but permits a worker to reopen for a period of only four years for an increase in benefits. Furthermore, she maintains that it creates discriminatory classes by treating workers who improve differently from those whose condition worsens. She maintains that there is no rational justification for creating such classes and, therefore, that the provision is unconstitutional.

Final workers' compensation awards are subject to the principles of the finality of judgments and are enforceable in circuit court. KRS 342.305. But, unlike other final judgments, they may be reopened on the motion of either party under certain,

specified conditions. Among those conditions is a post-award change of disability. KRS 342.125(1). The 1996 Extraordinary Session culminated in a comprehensive revision of Chapter 342 in an attempt to assure that benefits were promptly delivered, to remedy the failure to reduce the unfunded liability of the Special Fund, and to remedy the competitive disadvantage that Kentucky's employers faced due to the high cost of securing worker's compensation insurance, all of which are legitimate governmental purposes. 1996 Ky. Acts (1st Ex.Sess.), § 90. In view of what the legislature viewed as an emergency situation, the amendments took effect immediately upon approval of the governor. *Id.*

Under the 1996 Act, neither a worker nor an employer may reopen a pre-December 12, 1996, award after December 12, 2000, solely upon an allegation of a change of disability. KRS 342.125(3) specifies, however, that reopening is permitted at any time to reduce a total disability award when the recipient returns to work. It also permits reopening at any time when a partially disabled worker seeks TTD benefits during the period of an award.

■ Section 59(24) of the Kentucky Constitution prohibits the legislature from passing special legislation. The purpose of the provision is to prevent special privileges, favoritism, and discrimination and to ensure equality under the law. "A special law is legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favors others." *Board of Education of Jefferson Co. v. Board of Education of Louisville,* Ky., 472 S.W.2d 496, 498 (1971). The Commonwealth's power to legislate public policy in the area of employer/employee relations derives from its police power as well as the community interest in regulating the safety of the workplace and in requiring employers to provide for injured workers and their dependents so that they do not become a burden on the community. *Workmen's Compensation Board of Kentucky v. Abbott,* 212 Ky. 123, 278 S.W. 533 (1925). Legislative classifications that are based upon the police power must further objectives relevant to that power. *Schoo v. Rose,* Ky., 270 S.W.2d 940 (1954). In order for a law to be viewed as being general for the purposes of Section 59, it must apply equally to all in a class, and there must be distinctive and natural reasons inducing and supporting the classification. Furthermore, in order to subclassify a natural class of persons, the subclassification must be based upon some reasonable and substantial difference in kind, situation, or circumstance that bears a proper relation to the purpose of the statute. *Id.* In view of the presumption that legislative acts are constitutional, the claimant has the burden to show that the classes which KRS 342.125(3) creates are improper. *See Kentucky Harlan Coal Co. v. Holmes,* Ky., 872 S.W.2d 446 (1994).

■ The claimant asserts that KRS 342.125(3) violates Section 59(24) by giving employers and workers different rights with regard to reopening. She notes that an employer may reopen the award of a totally disabled worker at any time if the individual returns to work. Whereas, a worker such as herself, who receives a partial disability award and later becomes totally disabled, may not reopen more than four years post-award. Although some may view the claimant and her employer as being members of a similarly situated class by virtue of their common status as parties to a final workers' compensation award, the fact remains that they are opponents in the underlying litigation. In instances where a worker receiving benefits for permanent, total disability returns to work, a stated purpose of the amendments is furthered by permitting the em-

ployer to reopen for a reduction in the award. This serves to reduce the cost of workers' compensation insurance for Kentucky employers, improving their competitive status and, thereby, improving the economic climate for all citizens of the Commonwealth. In contrast, where a worker reopens and receives an increased award, the cost is increased. We conclude, therefore, that the separate classification of the worker and employer is reasonable, bears a proper relation to the purpose of the amendments, and is permissible under Section 59(24).

█ The claimant also asserts that she has become permanently and totally disabled since her initial award, that KRS 342.125(3) discriminates against her, and that it violates Section 59(24) by treating various groups of injured workers differently. She points out that although totally disabled workers who improve and return to work are subject to having their awards reopened and reduced at any time, partially disabled workers who later become totally disabled may not reopen after four years. Thus, members of the former group are permitted to receive benefits to which their disability no longer entitles them, while members of the latter group are prevented from receiving benefits commensurate with their disability. Furthermore, partially disabled workers who later experience a total disability that only is temporary may reopen throughout the period of their award and receive greater benefits; whereas, partially disabled workers who later become permanently and totally disabled may not reopen after four years.

It is obvious that the impact of a disability on the injured worker's wage-earning capacity is affected by whether the disability is partial or total, whether it is temporary or permanent, and whether the worker's condition remains stable, improves, or worsens. Furthermore, different types of awards have a different impact on workers' compensation costs. Thus, in attempting to accomplish its purpose, the legislature had legitimate reasons to treat totally and partially disabled workers differently, to treat those whose disability is temporary differently from those whose disability is permanent, and to treat workers whose condition improves differently from those whose condition worsens.

Permanent total disability awards are payable for life and are based upon as much as 100% of the state's average weekly wage. Whereas, permanent partial disability awards are payable for 425 or 520 weeks and are based upon up to 75% of the state's average weekly wage. A period of TTD generally is of relatively short duration and usually occurs immediately after an injury. It is apparent, therefore, that permanent total disability awards are likely to have the most significant impact on insurance costs. Whereas, TTD awards, particularly those that are entered more than four years after the initial award, are likely to have the least. Because the reopening of a permanent partial disability award may, and often does, result in the entry of an award for permanent total disability, KRS 342.125(3) furthers the goals of the 1996 amendments by limiting the period for reopening. Likewise, it furthers the legislative goal by permitting a reopening at any time to reduce a permanent total disability award if the recipient has returned to work.

Although KRS 342.125(3) creates an exception to the four-year period where a partially disabled worker experiences a post-award period of TTD, the cost of permitting reopening at any time during the period of the award rather than for only four years is not likely to be great. Furthermore, it is consistent with the philosophy underlying Chapter 342 to encourage partially disabled workers who experience periods of TTD to do what is necessary to

recover their health and then return to work. Although KRS 342.125(3) treats workers whose total disability is temporary differently from those whose total disability is permanent, the financial impact of the two types of awards is significantly different, and the net effect of the provision is to further the legislative purpose.

Although a partially disabled worker whose condition worsens after four years may not reopen and receive greater benefits, no exception permits reopening after four years to reduce the award of a partially disabled worker whose condition improves. We note, however, that nearly half of the duration of a partial disability award has expired after four years. Keeping in mind that reopenings involve litigation costs, it is apparent that the savings, if any, from reducing partial disability awards at that point are not likely to be great. Thus, it was unnecessary for the legislature to create an exception in the latter instance in order for KRS 342.125(3) to accomplish its purpose.

By limiting the time for reopening to a period of four years after the initial award unless one of the exceptions applies, KRS 342.125(3) has the net effect of reducing the cost of workers' compensation insurance and increasing the competitiveness of Kentucky employers, a purpose that is legitimate. Moreover, the classifications that KRS 342.125(3) creates are reasonable and bear a proper relation to the purpose of the amendments. We conclude, therefore, that the provision does not violate Section 59(24).

The decision of the Court of Appeals is affirmed.

All concur.