# Supreme Court of Kentucky

## 2007-SC-000153-WC

DATE 3|19|09 Ella Craust, D.C.

ALLENE HALL                                                                                          APPELLANT

|  |  |
|---|---|
| V. | ON APPEAL FROM COURT OF APPEALS<br>2005-CA-001887-WC<br>WORKERS' COMPENSATION BOARD NO. 95-WC-35309 |

HOSPITALITY RESOURCES, INC., ET AL                                              APPELLEES

## OPINION OF THE COURT BY JUSTICE SCOTT

## REVERSING

This is an appeal from a Court of Appeals' opinion affirming the decision of the Workers' Compensation Board, both of which are based on the underlying premise that the KRS 342.125(3) four year statute of limitation for motions to reopen in is to be calculated from the date of the *original award* only; this notwithstanding, that the Appellant/Claimant, Mrs. Hall (Hall), at the time the limitation allegedly ran, was (1) receiving temporary total disability (TTD) benefits *under an order granted subsequent to the original award* and (2) had *not* reached maximum medical improvement (MMI), a necessary prerequisite for a successful motion to reopen. For reasons that such construction of KRS 342.125(3) ignores its full statutory language, we disagree.

KRS 342.125(3) states the four year limitation shall be calculated from "the date of the original award *or order granting or denying benefits.*" (emphasis added). Thus, where an order is subsequently entered *granting or denying benefits*, as was the case here, the four year statute of limitation is to be calculated from the later date, rather than the earlier.

Thus, for reasons as are more fully explained hereinafter, we reverse the decision of the Court of Appeals and remand this matter to the Workers' Compensation Board for such further proceedings as are necessary and appropriate.[1]

## I.     Facts

Appellant, Hall, suffered a work related injury to her lower back and cervical spine on April 9, 1995, and filed a timely claim for Workers' Compensation benefits. As part of her treatment, a lumbar laminectomy was performed on May 1, 1996. On July 22, 1997, the claim was resolved by settlement, with both parties agreeing to benefits based upon a sixty percent (60%) permanent partial disability.

Hall, thereafter, remained under the care of Dr. Weinsweig, and on December 7, 2000, Dr. Weinsweig performed an additional surgical procedure, fusing two of her cervical disc levels. This subsequent

---

[1] Given our decision on the timing of the four year statute of limitation in KRS 342.125(3), all other issues raised by the parties are moot.

surgery necessitated Hall's January 10, 2001, motion to reinstate TTD benefits, which was sustained on February 14, 2001, by the Chief Administrative Law Judge (CALJ) who ordered, "that the plaintiff's TTD benefits will be reinstated beginning on December 7, 2000, and continuing until the plaintiff has reached maximum medical recovery."

As required, periodic reports regarding her recovery were submitted to the CALJ. Hall, however, continued to struggle to recover, continued to be compensated for TTD and continued to await maximum medical improvement (MMI) for a period of more than seventeen (17) months. Significantly, the four year statute of limitation for reopening, if calculated from the "date of the original award," expired on July 22, 2001, *six (6) months following the entry of the order awarding TTD benefits and almost eleven (11) months before Hall reached MMI.* Hall did not reach MMI until just prior to the order terminating the benefits on June 7, 2002.

After gathering medical opinions necessary to show both a "change of medical condition" and "occupational disability," Hall filed a motion to reopen on November 7, 2003, seeking an increase in her disability award. The motion was filed within two years and nine months of the February 14, 2001, order granting benefits, but more than four years from the "original award" of July 22, 1997.

Appellee then responded that the motion to reopen was barred by

3

the KRS 342.125(3) four year statute of limitation. The CALJ agreed, denying the motion to reopen by order of December 30, 2003. Appellant, thereafter, filed a petition for reconsideration, adding additional arguments to the effect that the claim had been "automatically" reopened by the CALJ's order granting TTD benefits on February 14, 2001. The motion for reconsideration was then granted, finding the reopening date to have been February 14, 2001, and the matter proceeded to proof and decision in front of an Administrative Law Judge (ALJ).[2]

Following proof, the ALJ issued an "Opinion and Award" finding Appellant had shown (1) the necessary "change of medical condition" and "occupational disability;" and, (2) that she is now permanently totally disabled. As to the question of limitation, the ALJ held:

> The Chief Administrative Law Judge has already determined that the motion to re-open was filed as of February 14, 2001. This was within four years of the original settlement approved on July 22, 1997. Thus, it is within the time allowed by KRS 342.125. The settlement was approved on July 22, 1997. Mrs. Hall underwent additional surgery on December 7, 2000. On January 11, 2001, [she] filed a motion to reopen styled Motion to Reinstate TTD Benefits. The employer responded to this motion as a Motion to Re-open. After the period of TTD, the plaintiff requested additional income benefits. The Chief Administrative Law Judge appropriately determined that the motion to reopen related back to the motion to reinstate TTD benefits. The

---

[2] The text of the ALJ's order of February 20, 2004, was as follows:

> It is hereby ordered that plaintiff's motion to reopen, dated November 7, 2003, and an order entered on December 30, 2003, overruling this motion (are) found to be moot and this claim is re-opened and proof time is to be set. The claim was reopened on February 14, 2001.

4

substance of the motion clearly related to a request for such benefits as were then ascertainable based upon a change of condition. TTD benefits were payable well into 2002. Arguably, the four-year time period for reopening expired on July 22, 2001. To hold that the motion to reinstate TTD benefits was not a motion to reopen, to hold that no motion to reopen was filed until some document entitled "Motion to Reopen" was filed, and to rule that the time period for requesting additional income benefits expired during the time that income benefits were being paid at the maximum rate, all would be to place form over substance. The Chief Administrative Law Judge appropriately determined that the motion to reopen was timely filed.

Following a denial of Appellee's petition for reconsideration, Appellee filed an appeal to the Workers' Compensation Board. The Board thereafter reversed, holding that (1) the four year statute of limitation is to be calculated from the date of the *original award* only; and, (2) as the matter was not "automatically" reopened for consideration of total disability benefits as a result of the motion for TTD benefits, the motion to reopen was untimely. The matter was then appealed to the Court of Appeals, which affirmed the Workers' Compensation Board. It comes to this Court as a matter of right. Vessels v. Brown-Forman Distillers Corp., 793 S.W.2d 795 (Ky. 1990). "The function of further review in our Court is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." Western Baptist Hosp. v. Kelly, 827 S.W.2d 685, 688 (Ky. 1992).

We now address the issue we consider central to the proper

5

resolution of this case, i.e., the beginning time of the KRS 342.125(3) four year statute of limitation.

## II. Motions to Reopen

Although the principle of finality of judgments applies to Workers' Compensation awards the same as court judgments, KRS 342.125 permits an award of compensation to be reopened prospectively in some cases due to certain post-award changes. Beale v. Faultless Hardware, 837 S.W.2d 893, 896 (Ky. 1992). The procedural device for doing so is a motion to reopen. Hodges v. Sager Corp., 182 S.W.3d 497, 499 (Ky. 2005). A motion to reopen is, in some respects, similar to a motion to re-docket, where the grounds for re-docketing are tested prior to the matter proceeding further. Cf., Evans Elkhorn Coal Co. v. Ousley, 388 S.W.2d 130, 131 (Ky. 1965) and Stambaugh v. Cedar Creek Mining Co., 488 S.W.2d 681, 682 (Ky. 1972). As we explained in Stambaugh:

> The party who seeks to change the Workmen's Compensation Board's decision . . . on an application to reopen should be required to make a reasonable prima facie preliminary showing of the existence of a substantial possibility of the presence of one or more of the prescribed conditions that warrant a change in the Board's decision before his adversary is put to the additional expense of relitigation. The Board should formulate reasonable standards for the form and content of such a preliminary showing.[3]

---

[3] Pursuant to such direction, the Office of Workers' Compensation has promulgated regulations with regard to motions to reopen. Presently, the regulation pertaining to a motion to reopen can be found in 803 KAR 25:010, Section 4(6)(a). This regulation provides that a motion to reopen should be accompanied by as many of the following items as may be applicable:

6

Id. at 682. Stambaugh, "left [it] to the fact-finder's 'reasonable discretion' to determine whether the showing in a particular case was sufficient to warrant the taking of evidence." Hodges, 182 S.W.3d at 500 (quoting Stambaugh, 488 S.W.2d at 682). However, where "the premise for a motion to reopen is a post-award change of disability [or medical condition], the change *must exist when the motion is filed* and the motion must be supported by the *prima facie* showing that KRS 342.125(1)(d) specifies." Id. (emphasis added).

Although, Hodges, dealt with "the type of *prima facie* showing that KRS 342.125(1)(d) requires in order to grant a motion to reopen," it very

---

1) A current medical release Form 106 executed by the plaintiff;

2) An affidavit evidencing the grounds to support reopening;

*3) A current medical report showing a change in disability established by objective medical findings;*

4) A copy of the Opinion and Award, Settlement, Voluntary Agreed Order or Agreed Resolution sought to be re-opened;

5) An affidavit certifying that a previous motion to re-open has not been made by the moving party, or if one (1) has previously been made, the date on which the previous motion was filed;

6) A designation of evidence from the original record specifically identifying the relevant items of proof which are to be considered as part of the record during re-opening; [and]

7) A certification of service that the motion was served on all parties as well as counsel for the parties.

(emphasis added).

pointedly established *when* the *prima facie* showing must be made. Id. at 498. In Hodges, the claimant filed her motion to reopen on December 12, 2000. On January 18, 2001, the ALJ placed the matter in abeyance. On January 19, 2001, the employer filed its response to the motion. On January 26, 2001, the ALJ amended the previous order, granted the motion to reopen, and placed the reopened claim in abeyance. In the subsequent proceeding on the merits, the employer continued to assert that the claimant's motion failed the necessary *prima facie* showing. In upholding the employer's argument, this Court stated:

> The record before the ALJ on January 26, 2001, included medical evidence that addressed the claimant's condition in May, 1999, when Dr. Davies began treating her. *That evidence did not permit her impairment in 1987 to be compared with her impairment in December, 2000, when she filed her motion to reopen.* Under the circumstances, it was an abuse of discretion to grant the motion.

Id. (emphasis added).

A claimant's burden at reopening is to prove that she sustained a post-settlement worsening of impairment from the injury; to prove that the change is permanent; and to prove that it caused her to be totally and permanently disabled. Colwell v. Dresser Instrument Div., 217 S.W.3d 213, 217, 218 (Ky. 2006). "Income benefits are awarded based upon the amount of occupational disability which exists at the time the worker reaches maximum medical improvement following an injury," Brooks v. University of Louisville Hosp., 33 S.W.3d 526, 530 (Ky. 2000),

8

and an "[i]mpairment is considered to be permanent 'when it has reached maximum medical improvement (MMI), meaning it is well stabilized and unlikely to change substantially in the next year with or without medical treatment.'" Colwell, 217 S.W.3d at 217. Thus, given the fact that Hall was still receiving TTD benefits and had not reached MMI by the time the four year limitation allegedly ran, she could not have made the *prima facie* showing as is required upon the filing of a motion to reopen prior to its alleged expiration date.

The unsupported suggestion by the Court of Appeals that Hall could have avoided the four year limitation of KRS 342.125(3) by pre-filing and *then abating the motion to reopen* until she reached MMI (even if MMI was *post*-expiration of four years from the original award date) is simply not correct under the existing statutory scheme. See Kendrick v. Toyota, 145 S.W.3d 422, 425 (Ky. App. 2004). In Kendrick, the Court of Appeals stated:

> Addressing the claimant's argument that the *abeyance provisions* contained in KRS 342.265(5) and the statute of limitations contained in KRS 342.185(1) should be applied so as to extend the statute of limitations on reopening, the court determined those statutes were directed *solely* to the "application for resolution of a claim" and the filing of an "application for adjustment of claim" respectively. The court stated that based upon the plain language of the statutes, they were applicable to initial claims and *not motions to reopen.*

Id. (citations omitted) (emphasis added). There is simply no statutory

authority for an ALJ to place a motion to reopen in abeyance once the motion is challenged by an opposing party. Moreover, the suggestion by the dissent, that since Appellant had asked "for all proper relief" in her motion for TTD benefits her KRS 342.125(3) statute of limitations within which to file a motion to reopen *was extended* from July 22, 2001 to June 7, 2002 — is belied by the dissent's ultimate premise — that KRS 342.125(3) *cannot be extended* by subsequent orders granting benefits. This notwithstanding, that MMI is a *prerequisite* for the evaluation of permanent impairment and "a permanent impairment rating is [a] *prerequisite* to a finding of permanent total disability." Colwell, 217 S.W.2d at 217. An "[i]mpairment is considered to be permanent 'when it has reached maximum medical improvement (MMI), meaning it is well stabilized and unlikely to change." Id. "Once an impairment has reached MMI a permanent impairment rating may be performed." Linda Cocchiarella & Gunnar B.J. Anderson, Guides to the Evaluation of Permanent Impairment 19 (5th ed. 2000).

Thus, as a practical matter it takes many months to put together experts and expert reports making the appropriate medical/legal comparison between the prior permanent partial disability and a permanent total disability, as well as the other documentation required by 803 KAR 25:10 § 4(6)(a). And this can only begin *after* the attainment of MMI. Here, MMI occurred eleven (11) months *after* the alleged

expiration of the limitations.

Generally, the standard for reopening that existed as of the date of the injury controls the rights and obligations of the parties. Woodland Hill Min., Inc. v. McCoy, 105 S.W.3d 446, 448 (Ky. 2003); KRS 342.125(6). However, the four year statute of limitation added to KRS 342.125 after Hall's injury is an exception to the rule. Meade v. Reedy Coal Co., 13 S.W.3d 619, 622 (Ky. 2000) ("the four-year limitation contained in KRS 342.125(3) govern[s] the reopening of claims in which an award is entered on or after December 12, 1996."). Thus, the evidentiary standards for reopening are controlled by the statute on the date of injury (1995), but, the limitation period is governed by the latter amendment. Id.

In 1995, when Appellant was injured, KRS 342.125(1) provided *an award or order* could be reopened *at any time* upon the requisite showing. As aforenoted however, KRS 342.125(3) was amended effective December 12, 1996, to provide, in pertinent part, that:

> (1) Upon motion by any party or upon an . . . administrative law judge's own motion, an . . . administrative law judge may reopen and review *any award or order* on any of the following grounds:
>
> . . . .
>
> (d) Change of disability as shown by objective medical evidence of worsening or improvement of impairment due to a condition caused by the injury since the date of the award or order.

. . . .

> (3) Except for reopening solely for determination of the compensability of medical expenses, fraud, or conforming the award as set forth in KRS 342.730(1)(c)2., or for reducing a permanent total disability award when an employee returns to work, no claim shall be reopened more than four (4) years following the date of the *original award or order granting or denying benefits*, or within two (2) years of such *award or order*, and no party may file a motion to reopen within two (2) years of any previous motion to reopen by the same party.[4]

. . . .

> (8) The time limitation prescribed in this section shall apply to all claims irrespective of when they were incurred, or when the award was entered, or the settlement approved. However, claims decided prior the effective date of this act, may be reopened within four (4) years of the award or order or within four (4) years of the effective date of this act, whichever is later, provided that the exceptions to reopening established in subsections (1) and (3) of this section shall apply to these claims as well.

KRS 342.125 (Dec. 12, 1996). (emphasis added).

In this instance, the ALJ found the settlement as originally approved to be consistent with an award pursuant to KRS 342.730(1)(d) and, thus, held Appellant to a standard of proof showing a "change in medical condition," KRS 342.730(1)(d), as well as the additional standard

---

[4] KRS 342.125(3) was again amended on July 14, 2000, dropping the two (2) year reopening bar from the date of the "original award or order granting or denying benefits," and dropping the bar on reopening from two (2) years from a previous reopening to one (1) year, while adding the right to file a motion for TTD at any time during the period of an award.

of showing a "change in occupational disability," as was then required by KRS 342.125(1) (1995). Reviewing the evidence, the ALJ found that Appellant proved both standards, finding:

> Allene Hall, as a result of the injury of April 9, 1995, is now totally occupationally disabled.

> There has been a change in medical condition and a change of occupational disability as a result of the injury of April 9, 1995.

### III. The KRS 342.125(3) Statute of Limitation

In two unpublished opinions, Cook v. Unicorn Min., No. 2003-SC-0616-WC, 2004 WL 1908114, (August 26, 2004) and Cruse v. Aristech Chemical Co., No. 2004-SC-0291-WC, 2005 WL 119771, (January 20, 2005),[5] this Court rendered opinions supporting the opinions of the Workers' Compensation Board and Court of Appeals on facts similar to the facts at hand. We did not, however, closely scrutinize the distinction between the words "original award *or order granting or denying benefits.*" See KRS 347.125(3).

In Cook, we overlooked the statutory language *"award or order"* referred to in KRS 342.125(8), noting only that the claimant's 1998 order denying benefits, following his 1995 award, was not the "award or *settlement* referred to in the statute." Cook, No. 2003-SC-0616-WC, 2004

---

[5] Pursuant to CR 76.28(4)(c) unpublished Kentucky Appellate decisions rendered after January 1, 2003, may be cited for consideration by the Court if there is no published opinion that would adequately address the issue before the Court.

WL 1908114, at *2 (emphasis added). Plainly, the pertinent statutory language refers to an "order or award" rather than a settlement.[6] In Cruse, we recognized the correct statutory language of KRS 342.125(3), i.e., "original award or order granting or denying benefits," but still held that an order *reducing* the claimant's award on the employer's later motion to reopen "was not the original award or order granting or denying benefits." Cruse, No. 2004-SC-0291-WC, 2005 WL 119771, at *2. As was often the practice concerning "unpublished opinions," we did not elaborate on our reasons for giving control of the subject phrase to the word "original." Johnson v. Gans Furniture Industries, Inc., 114 S.W.3d 850, 858 (Ky. 2003), the facts of which again, *did not* involve a subsequent "order granting or denying benefits" as did Cruse and Cook, made the same mistake in its' dicta, relying only on the statutory language "original award," while overlooking the full statutory language "original award or order granting or denying benefits." KRS 342.125(3).

Wray v. Allied Systems, No. 2004-SC-002122-WC, 2005 WL 1058862, (Ky. App. 2005), followed with the same result as Cruse. Here again, a *subsequent order reducing* the Appellant's award on the employer's motion to reopen was not recognized as an "order granting or

---

[6] The word "settlement" is used only in the first sentence of KRS 342.125(8), which is the sentence necessary to establish the "remedial intent" of the legislature in order that the statute applies retroactively. See KRS 446.080(3).

denying benefits." And here, in this case, the Court of Appeals relied on Kendrick, 145 S.W.3d at 425. Kendrick, however, dealt only with the question of whether the *voluntary payment* of post-award TTD benefits by the employer *without a motion and order granting such benefits*, extended the four year statute of limitations under KRS 342.125(3). The Court, holding the filing of the motion to reopen untimely, held the "[v]oluntary payment of TTD benefits post-award is not an exception contained within the statute." Id. A point with which we do not disagree, since there was no order requiring payment of income benefits.

It is now apparent that these previous interpretations of KRS 342.125(3), by the Court of Appeals and this Court, have put claimants such as Hall in the untenable position of attempting to avoid their holdings by (1) filing premature motions to reopen, even though the claimant *has not reached MMI* and thus *cannot realistically determine and apprise the tribunal of the required degree of change*,[7] or (2) being forced to forego promised benefits by allowing the statute of limitation to expire while actively receiving medical treatment *designed to achieve the MMI* necessary for such a motion, where MMI (and thus the existence of objective medical, disability and occupational evidence) *occurs* post-limitation period. Surely workers' compensation cases for injured

---

[7] This entails a rare occurrence where a claimant *can get* an experienced compensation attorney to take on, or assist claimant, in this arduous task (given the risk under CR 11) without any prospects of recovering compensation for his work, unless he is successful on the motion to reopen.

15

claimants should be decided on "their merits rather than on the basis of gamesmanship." Kroger Co. v. Jones, 125 S.W.3d 241, 246 (Ky. 2004). Thus, we are compelled by the patent absurdity of this result to question our earlier analysis of the legislature's intent regarding the statutory language at issue.

"The seminal duty of a court in construing a statute is to effectuate the intent of the legislature." Commonwealth v. Plowman, 86 S.W.3d 47, 49 (Ky. 2002) (citing Commonwealth v. Harrison, 14 S.W.3d 541 (Ky. 2000)). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." United States v. Plavcak, 411 F.3d 655, 660 (6th Cir. 2005) (citing Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)).Thus, we are "to ascertain the intention of the legislature from words used in enacting statutes rather than surmising what may have been intended but was not expressed." Stopher v. Conliffe, 170 S.W.3d 307, 309 (Ky. 2005), overruled on other grounds by Hodge v. Coleman, 244 S.W.3d 102 (Ky. 2008).

Thus, if a statute is clear and unambiguous and expresses the legislature's intent, the statute must be applied as written. Griffin v. City of Bowling Green, 458 S.W.2d 456, 457 (Ky. 1970). And absent an ambiguity, "there is no need to resort to the rules of statutory

16

construction in interpreting it." <u>Stewart v. Estate of Cooper</u>, 102 S.W.3d 913, 915 (Ky. 2003). However, where an ambiguity does exist, an "absurdity which may follow one construction or another may properly be considered." <u>Fayette County v. Hill</u>, 304, Ky. 621, 625, 201 S.W.2d 886, 889 (1947). Statutes, of course, "must be read as a whole and in context with other parts of the law." <u>Lewis v. Jackson Energy Co-Op Corp.</u>, 189 S.W.3d 87, 92 (Ky. 2005).

"It is a basic principle of statutory construction that terms joined by the disjunctive "or" must have different meanings because otherwise the statute or provision would be redundant." <u>United States v. Hill</u>, 79 F.3d 1477, 1482, 1483 (6th Cir. 1996); <u>see also</u> <u>Garcia v. United States</u>, 469 U.S. 70, 73, 105 S.Ct. 479, 481, 83 L.Ed.2d 472 (1984) ("Canons of construction indicate that terms connected in the disjunctive in this manner be given separate meanings."). Although one could argue the words "or" and "and" can be easily interchanged, "we point out that to make such interchange it must be obvious that the intent of the legislature would be thwarted if the change were not made." <u>Boron Oil Co. v. Cathedral Foundation, Inc.</u>, 434 S.W.2d 640, 641 (Ky. 1968) (<u>citing</u> <u>Duncan v. Wiseman Baking Co.</u>, 357 S.W.2d 694 (Ky. 1962)). Here, if the limitation was intended to mean four years from the "original decision," it is fair to assume the legislature would not have added the additional language, "or order granting or denying benefits." KRS

17

342.125(3). One surely would not contend that an order *denying benefits* is the same as an original *award*.

That the reference to the "original award or order granting or denying benefits" was intended to encompass orders granting benefits other than the "original award," is established by several additional uses in the same statute. For example, KRS 342.125(1) allows an ALJ to "reopen and review any award *or order*" on stated grounds. (emphasis added). It is uncontestable that the reference to "order" in KRS 342.125(1) encompasses an order different than the original award, otherwise there could be no reopenings of awards changed subsequent to the original award, increasing or decreasing benefits, as all must concede is the practice. For example, KRS 342.125(1)(d) specifically allows a "reopening and review" upon a "[c]hange of disability as shown by objective medical evidence of worsening or improvement of impairment due to a condition caused by the injury since the date of the award *or order.*" (emphasis added). If the word "order" was interpreted to refer only to the original award, a "review and reopening" of a subsequently increased or decreased award or order could simply not occur. And, KRS 342.125(4) acknowledges that the "[r]eopening shall not affect the *previous order* or award as to any sums already paid thereunder." (emphasis added). Meaning simply that the *new* award or order will operate prospective only for the remaining term of the award.

18

Given our further analysis, the conclusion that an "order granting or denying benefits" was tended to encompass an order granting benefits *different* than an original award or settlement is compelling. Thus, the reference in KRS 342.125(3) to the "the original award or order granting or denying benefits," must necessarily refer not only to the original award, but to any *subsequent* order granting or denying benefits. Any contrary interpretation leads to absurd results, as well as a violation of the clear spirit of the Kentucky Workers' Compensation Act. Plummer v. Sharondale Coal Corp., 834 S.W.2d 708, 711 (Ky. App. 1992) ("We refuse to afford an interpretation to the statute that would create irrational distinctions yielding absurd results that would serve to undermine the purpose of the Workers' Compensation Act."). "We have often said that statutes will not be given [such a] reading where to do so would lead to an absurd or unreasonable conclusion." Wesley v. Board of Ed. of Nicholas County, 403 S.W.2d 28, 30 (Ky. 1966); see also Commonwealth of Ky., Dept. of Highways v. Wilkins, 320 S.W.2d 125, 126 (Ky. 1959).

The Appellant's motion, therefore, was clearly filed within the four year period of the statute of limitations contained in KRS 342.125(3), as the motion to reopen filed on November 7, 2003, was within four years from the February 14, 2001, order *granting benefits*.[8] An order denying a

---

[8] The June 7, 2002 order "discontinuing benefits" is not an order *denying benefits*, as it merely completed the "benefit scheme" envisioned by the order granting benefits of February 14, 2001.

motion to reopen under the *prima facie* principles of <u>Hodges</u> and <u>Stambaugh</u>, on the other hand, would not constitute an *order granting or denying benefits*, as a denial of a motion to reopen for failure to make a *prima facie* showing does not deal with benefits, but rather whether or not there are grounds to reopen and take proof akin to a motion to re-docket. <u>Cf.</u>, <u>Hodges</u>, 182 S.W.3d at 500; <u>see also</u> <u>Stambaugh</u>, 488 S.W.2d at 681.

In contrast, it has been suggested that if KRS 342.125(3) is interpreted to mean that a subsequent order granting or denying TTD benefits would renew the four year period allowed for reopening, then the four year period would effectually be nullified by the filing of successive frivolous motions *ad infinitum*. We do not succumb to this argument. Nor do we agree that a medical fee dispute encompasses benefits, as benefits relate only to "income" benefits. <u>Cf.</u>, KRS 342.730.

In the case of motions to reopen to increase or decrease monetary benefits filed within the limitation period set out in KRS 342.125(3), it is unrealistic to even suggest that one could file motions to reopen every four years for the purpose of preventing the four year period of limitation from ever ending, as the motion to reopen must make a *prima facie* showing of sufficient grounds for an award under the standard of <u>Hodges</u> and <u>Stambaugh</u>.

A second obvious obstacle is obtaining legal counsel to file, or

20

assist, in such a motion as there are no incentives for claimant's attorneys to file frivolous motions to reopen. A meritorious motion to reopen is challenging enough, and pursuant to KRS 342.320, *no fee can be charged unless an attorney wins additional benefits*, which fee is limited to the formula set out therein, and must be approved by an ALJ.[9] Payments from clients are simply unacceptable under the Kentucky's Workers' Compensation Act. Nor can we conceive that compensation carriers would be so wasteful of their funds. Thus, such an argument is simply not supportable.

Aside from CR 11, KRS 342.310 is an additional deterrent to the filing of such frivolous motions. It allows substantial sanctions against a party who files such motions. KRS 342.310(1) provides that if an ALJ, the Board, or any court before whom such proceedings are brought under the Workers' Compensation Act, determines that such proceedings have been brought, prosecuted or defended without reasonable grounds, they may assess the whole cost of the proceedings, including court costs, travel expenses, deposition costs, physician expenses, attendance fees at depositions, attorney fees, and all other out-of-pocket expenses, against the party who so brought, prosecuted, or defended them.

This Court addressed such an infraction in the case of <u>Pikeville Coal Co./Chisholm Coal Co. v. Sullivan</u>, 895 S.W.2d 574 (Ky. 1995),

---

[9] "If no additional amount is recovered upon reopening, no attorney's fee shall be awarded." KRS 342.320(7).

wherein a claimant filed three successive claims for retraining incentive benefits within two years against the same employer. In Pikeville Coal Co., the employer asserted its concern to the Court regarding employers being subjected to economic blackmail because of the threat of successive claims for retraining incentive benefits which could cost more to defend than to settle. This court responded as follows:

> We would point out . . . that there are ramifications for filing frivolous claims, and costs may and should be assessed against the offending party. KRS 342.310. Certainly, merely filing the same claim over and over again, after a decision has been reached on the merits, and without different circumstances to warrant reopening, KRS 342.125, or a new claim, justify all penalties and sanctions permitted by law.

Id. at 575.

With regard to motions for TTD benefits, this could not be the case, as KRS 342.125(3) refers to a motion seeking TTD benefits *during the period of the award*, which for anything less than a total disability award, cannot exceed 425 weeks (8.17 years) or 520 weeks (10 years), depending on the disability rating for which the award was made. KRS 342.730(1)(d).

Thus, our analysis today convinces us that our holdings in Cruse and Cook, as well as the Court of Appeals' decision in Wray, were incorrect as to the timing of the four year statute of limitation under KRS 342.125(3), and thus, Cruse, Cook and Wray are overruled to the extent they are inconsistent herewith. We do not, however, depart from the holding in Kendrick, as KRS 342.125(3) plainly requires an "order granting or denying benefits."

III.    Conclusion

For the forgoing reasons the opinion of the Court of Appeals is hereby reversed and this matter is remanded to the Workers' Compensation Board for such further proceedings as are necessary and appropriate.

All sitting.  Cunningham, Noble, and Schroder, JJ., concur.  Minton, C.J., dissents by separate opinion in which Abramson and Venters, JJ., join.

COUNSEL FOR APPELLANT:

Arnold Turner, Jr.
P.O. Box 388
Prestonsburg, KY 41653

COUNSEL FOR APPELLEE:

Scott Caldwell Wilhoit
Clark & Ward, PLLC
716 W. Main Street, Ste. 201
Louisville, KY 40202

COUNESL FOR SPECIAL FUND, LABOR CABINET:

Robert L. Whittaker
Department of Labor
1047 US Hwy 127 S. Suite 4
Frankfort, KY 40601

Sharon M. Cooper
Special Fund
U.S. 127 South
Frankfort, KY 40601

COUNSEL FOR HON. RICHARD M. JOINER (ALJ):

Richard M. Joiner
Mitchell, Joiner, Hardesty & Lowther
145 East Center Street
Madisonville, KY 42431

COUNSEL FOR WORKERS' COMPENSATION BOARD:

Dwight Taylor Lovan
Executive Director
Office of Workers' Claims
Prevention Park
657 Chamberlin Avenue
Frankfort, KY 40601

# Supreme Court of Kentucky

2007-SC-000153-WC

ALLENE HALL                                                                APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2005-CA-001887-WC
WORKERS' COMPENSATION BOARD NO. 95-WC-35309

HOSPITALITY RESOURCES, INC., ET AL.                        APPELLEES

## DISSENTING OPINION BY CHIEF JUSTICE MINTON

The 1996 Extraordinary Session of the Kentucky General Assembly
enacted emergency legislation to effectuate immediate and sweeping changes in
Kentucky's Workers' Compensation system.[1] One of the principal changes
came in Kentucky Revised Statutes (KRS) 342.125, which established a time
limit for reopening claims.[2] As we have explained in earlier opinions discussing
reopening claims, final workers' compensation claims are unique because they

---

[1] See 1996 Ky.Acts (1st Ex.Sess.), § 90, which declared the amendments to the
Workers' Compensation statutes emergency legislation taking effect immediately
upon approval by the governor, stated:

"The General Assembly finds and declares that workers who incur injuries covered
by KRS Chapter 342 are not assured that prescribed benefits will be promptly
delivered, mechanisms designed to establish the long-term solvency of the special
fund have failed to reduce its unfunded liability, and many of the Commonwealth's
employers are placed at a competitive disadvantage due to the cost of securing
workers' compensation insurance coverage. These circumstances threaten the
vitality of the Commonwealth's economy and the jobs and well-being of its
workforce."

[2] Johnson v. Gans Furniture Industries, Inc., 114 S.W.3d 850, 856 (Ky. 2003) (citing
1996 Ky.Acts. (1st Ex.Sess.), § 90).

are subject to reopening, unlike other final judgments. Our legislature in 1996 found it necessary to set time limits on theretofore unlimited rights of reopening to avoid what the legislature saw as a looming financial catastrophe in Kentucky:

> Final workers' compensation awards are subject to the principles of the finality of judgments and are enforceable in circuit court. KRS 342.305. But, unlike other final judgments, they may be reopened on the motion of either party under certain, specified conditions. Among those conditions is a post-award change of disability. KRS 342.125(1). The 1996 Extraordinary Session culminated in a comprehensive revision of Chapter 342 in an attempt to assure that benefits were promptly delivered, to remedy the failure to reduce the unfunded liability of the Special Fund, and to remedy the competitive disadvantage that Kentucky's employers faced due to the high cost of securing worker's compensation insurance, all of which are legitimate governmental purposes. 1996 Ky. Acts (1st Ex.Sess.), § 90. In view of what the legislature viewed as an emergency situation, the amendments took effect immediately upon approval of the governor. *Id.* [*citing to* 1996 Ky.Acts. (1st Ex.Sess.), § 90].[3]

After the 1996 amendments, all claims—with only certain specified exceptions provided in KRS 342.125—are subject to reopening for only four years after "the original award or order granting or denying benefits . . . ."[4] And until today, Kentucky courts have understood and upheld this four-year time limitation and affirmed the dismissal of reopening claims not filed within four years after the initial grant or denial of benefits (whether called an award or order). We did so despite arguments of unconstitutionality and harshness to workers because we recognized the proper role of the legislative branch to create or amend statutes for the valid purpose of averting what it viewed as a

---

[3]   Johnson, 114 S.W.3d at 855-56.

[4]   KRS 342.125(3).

2

financial crisis threatening the viability of the economy of the Commonwealth and the jobs and well-being of its workforce.[5]

I must dissent as today the majority blithely overrules binding precedent[6] and engages in tortured semantics to allow reopening within four years of *any* order, not just the *original* order granting or denying benefits. The plain and simple meaning of the statute mandates a four-year limitations period after the *original* denial or grant of benefits, as aptly stated by then-Judge Schroder in Wray:

> The plain language of KRS 342.125(3) only provides for a four-year limit following the date of the original award. The statute does not provide for a subsequent order or award to have any effect on the four-year period. . . .
>
> The General Assembly could have provided a statute of limitations which imposed a four-year limitation from the date of the original award *or* four years from the last order on a motion to reopen–whichever is later, but it did not. Therefore, we are bound by the plain-meaning of the statute and cannot expand the period of limitations as [the claimant] asks.[7]

---

[5] *See e.g.* Johnson, 114 S.W.3d at 858 ("By limiting the time for reopening to a period of four years after the initial award unless one of the exceptions applies, KRS 342.125(3) has the net effect of reducing the cost of workers' compensation insurance and increasing the competitiveness of Kentucky employers, a purpose that is legitimate. Moreover, the classifications that KRS 342.125(3) creates are reasonable and bear a proper relation to the purpose of the amendments. We conclude, therefore, that the provision does not violate Section 59(24) [of the Kentucky Constitution].").

[6] Contrary to the majority interpretation, I find no reason to overrule our recent precedent of Cook v. Unicorn Mining, No. 2003-SC-000616-WC, 2004 WL 1908114 (Ky. Aug. 26, 2004), or Cruse v. Aristech Chemical Co., No. 2004-SC-000291-WC, 2005 WL 119771 (Ky. January 20, 2005), nor the Court of Appeals case of Wray v. Allied Systems, No. 2004-CA-002122-WC, 2005 WL 1058862 (Ky.App. May 6, 2005).

[7] Wray at ** 1-2 (citation omitted).

3

KRS 342.125(3) prohibits reopening a workers' compensation claim "more than four years following the date of the original award or order granting or denying benefits" except under specified circumstances. Those specified circumstances include a reopening to obtain temporary total disability (TTD) benefits within the period of an award, but they do not include a reopening to obtain greater permanent disability benefits. Under KRS 342.125(8), the four-year period for reopening applies "to all claims irrespective of when they were incurred . . . or the settlement approved."

I do agree that the Workers' Compensation Act is social legislation enacted to benefit injured workers. But proceedings under the Act are adversarial. And a worker cannot sit on her rights and let a statute of limitations expire, either with regard to an initial claim or a motion to reopen.

Allene Hall's initial motion sought both TTD and "all appropriate relief"; but she failed to respond to the employer's request to terminate TTD or to assert before June 7, 2002, that her permanent disability had increased. The predicates of her rationale for tolling the four-year period of limitations expired on June 7, 2002, when the ALJ entered the order terminating TTD. The order finally disposed of the TTD question, which was the only matter that had been raised; and KRS 342.125(3) and (8) barred reopening for the purpose of obtaining an increase in permanent income benefits because more than four years had passed since the order approving the initial settlement. So permitting Hall to raise the question of increased permanent disability after June 7, 2002, prejudiced the employer and was inconsistent with the plain

4

statutory language and legislative intent to establish definitive time limits on reopening claims.

I would affirm.

Abramson and Venters, JJ., join this dissenting opinion.