# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: OCTOBER 29, 2009
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2008-SC-000960-WC

REBECCA DAWSON                                             APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                   CASE NO. 2008-CA-000856-WC
WORKERS' COMPENSATION BOARD NO. 00-01244


CORNERSTONE CARE, LLC;
HONORABLE RICHARD M. JOINER,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                               APPELLEES


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

The Administrative Law Judge (ALJ) refused to modify the claimant's

award, having found that the record at reopening contained no objective

medical findings of a worsening of impairment. The Workers' Compensation

Board affirmed and the Court of Appeals affirmed the Board. Appealing, the

claimant argues that the ALJ erred by requiring more than prima facie

evidence of a worsening of impairment because the permanent disability from

her injury had become total.

We affirm. Although prima facie evidence of a worsening of impairment

shows a change of disability sufficient for the first step of the reopening

process,[1] KRS 342.125(1)(d) does not permit a final award be increased unless the worker proves a post-award increase in disability "as shown by objective medical evidence of worsening . . . of impairment."[2] Only then does the question become whether the increased disability warrants increased benefits under KRS 342.730(1)(a) or (b). The ALJ did not err because the claimant failed to prove increased disability.

The claimant sustained a herniated disc at L5-S1 in 1997 for which she underwent a laminectomy and diskectomy. The back injury that is the subject of her award occurred at work on July 31, 1999, causing a herniated disc at L 4-5 and a recurrent herniation at L5-S1. As a consequence, Dr. Lockstadt performed an anterior diskectomy and fusion at L4-5 and at L5-S1. Although the claimant returned to work for a period of time, her application for benefits alleged that she was totally disabled.

The claimant testified in February 2001 that she ceased working due to back pain that extended into both legs and was severe enough that she took Neurontin and Oxycontin. She stated that she could perform only light housework and had applied for social security disability benefits. The parties settled the claim for a partial disability that was based on a 23% permanent impairment rating but excluded an 8% rating for pre-existing active impairment. The resulting benefit was multiplied by 1.5 due to the claimant's

---

[1] Stambaugh v. Cedar Creek Mining Co., 488 S.W.2d 681 (Ky. 1972).
[2] Colwell v. Dresser Instrument Division, 217 S.W.3d 213 (Ky. 2006).

2

lack of physical capacity to return to the type of work performed at the time of the injury. Attached to the settlement was a March 2001 report from Dr. Patrick. An ALJ approved the agreement on May 4, 2001.

After the settlement, the claimant experienced persistent pain that occasionally radiated into her hips and was not relieved by a spinal cord stimulator. She underwent a fusion from L4 through S1 on October 31, 2003, in an attempt to stabilize her spine, and filed a motion to reopen to obtain temporary total disability (TTD) benefits on December 19, 2003. Although the employer asserted that she failed to make an adequate prima facie showing of TTD based on Dr. Lockstadt's November 12, 2003, report, the Chief ALJ granted the motion to the extent of reassigning the matter for further proceedings.

The claimant moved to hold the matter in abeyance in March 2004, stating that the employer was paying TTD benefits. On June 14, 2005, she filed a request for a benefit review conference, stating that she had reached maximum medical improvement (MMI). The issue then became whether her permanent disability had increased. The ALJ assigned the parties proof times, after which they submitted evidence on the merits of the claim for increased permanent income benefits.

The claimant maintained that a worsening of the injury caused her to be permanently and totally disabled although her permanent impairment rating did not increase. She acknowledged that she never experienced sufficient pain

relief after the injury to return to any of her previous work but testified that the back pain that extended into both legs had become more intense. She continued to take medications similar to those at the time of the settlement and to experience similar difficulties in performing activities of daily living.

Dr. Lockstadt, who performed the 2003 surgery, noted on November 12, 2003, that the claimant should "continue on restricted work schedule." He also completed a work status form indicating that she could return to light duty with standard lumbar spine restrictions on December 1, 2003. He performed subsequent procedures to remove a non-functional spinal cord stimulator and to remove some hardware affixed to her spine in the October 2003 fusion. When the claimant returned on March 31, 2005, after the final procedure, she reported some improvement in her pain but continued to have back and leg pain. A functional capacity evaluation performed in May 2005 indicated that she could work at a light physical demand level for an eight hour day. Dr. Lockstadt assigned a 23% impairment rating under DRE category IV, apportioning an 18% rating to the work-related injury and a 5% rating to the 1997 surgery.

Dr. Troutt evaluated the claimant on May 16, 2005. He noted tenderness in the paraspinal region with spasm and a reduced range of motion in the lumbosacral spine. His diagnoses included the L4-S1 fusion; chronic lower back pain; chronic lumbosacral myofascial pain syndrome; an overall deconditioned state of the lumbosacral stabilizers; and a resulting functional

decline. He assigned a 23% permanent impairment rating; imposed various work restrictions; and stated that the claimant could not return to the type of work performed at the time of injury.

Dr. Stephens evaluated the claimant for the employer on August 31, 2005. He assigned a 23% impairment rating based on the 2000 surgery and noted that her complaints of increased pain did not warrant a higher rating.

Shari Deogracias, a vocational expert, evaluated the claimant for the employer both before the settlement and at reopening. She found no evident change in occupational disability and stated that the claimant could perform a number of jobs in the light physical demand category at both points in time.

Records from Dr. Mazloomdoost, who began treating the claimant for pain in June 2004, noted various diagnoses. The most recent recommended that she continue various analgesics for persistent, moderately severe symptoms.

The ALJ dismissed the reopening initially because the claimant failed to prove an increased permanent impairment rating. On remand from the Court of Appeals for a reconsideration of the merits under the definition of "impairment" set forth in Colwell v. Dresser Instrument Division,[3] the ALJ determined that KRS 342.125(1)(d) did not permit the award to be modified. The ALJ reasoned that the claimant testified to a worsening of her functional

---

[3] 217 S.W.3d 213.

abilities but failed to prove a change of disability because no objective medical evidence showed a worsening of impairment. Although the claimant argues that the ALJ misinterpreted Colwell, we disagree.

A final workers' compensation award is the equivalent of a judgment and may be enforced in circuit court.[4] Although KRS 342.125(1)(a) - (d) permit an ALJ to "reopen and review" an award upon a party's motion, reopening is a two-step process. Stambaugh v. Cedar Creek Mining Co.[5] explains that a motion to reopen a final award must be supported by a reasonable prima facie showing of a substantial possibility of prevailing under a ground set forth in KRS 342.125(1) to warrant putting the defendant to the expense of further litigation. Hodges v. Sager Corp.[6] explains that neither Stambaugh nor any post-1972 amendment to KRS 342.125 requires the prima facie showing to be sufficient to support a finding for the movant on the merits of the claim for additional benefits. Thus, the initial decision to grant or deny the motion (i.e., the decision to permit further litigation) is reviewed for an abuse of discretion.

Colwell v. Dresser Instrument Division[7] addressed the second step of the reopening process. It was rendered after the second step of the present reopening was complete, during the pendency of the claimant's appeal. Like the present case, Colwell concerned an allegation of permanent total disability under KRS 342.125(1)(d), which requires a "[c]hange of disability as shown by

---

[4] KRS 342.305.

[5] 488 S.W.2d 681.

[6] 182 S.W.3d 497, 500 (Ky. 2005).

[7] 217 S.W.3d at 218.

6

objective medical evidence of worsening or improvement of impairment" in order to reopen and modify an award.[8] The issues included the meaning of the word "impairment."

The Colwell court determined that "impairment" refers to the definition found in the AMA Guides to the Evaluation of Permanent Impairment (i.e., a loss, loss of use, or derangement of any body part, organ system, or organ function) rather than to a permanent impairment rating assigned under the Guides. The court also determined that KRS 342.125(1)(d) requires a finding of increased disability as shown by objective medical evidence of a worsening of impairment in order to increase an award at reopening.[9] The court reasoned that KRS 342.0011(1) requires a harmful change in the human organism to be evidenced by objective medical findings in order to be compensable and that KRS 342.0011(33) defines "objective medical findings" as being "information gained through direct observation and testing of the patient applying objective or standardized methods."[10] Thus, KRS 342.125(1)(d) requires no less at

---

[8] The claimant asserts erroneously that Hall v. Hospitality Resources, 276 S.W.3d 775 (Ky. 2008), changed the standard for reopening. Hall concerned the period within which KRS 342.125(3) permits reopening.

[9] Cases such as Dingo Coal Co. v. Tolliver, 129 S.W.3d 367 (Ky. 2004); Garrett Mining Co. v. Nye, 122 S.W.3d 518 (Ky. 2003); and Woodland Hills Mining, Inc. v. McCoy, 105 S.W.3d 446 (Ky. 2003), in which the parties premised their arguments on an assumption that KRS 342.125(1)(d) required an increased permanent impairment rating, do not govern the present facts.

[10] A worker's subjective complaints may be sufficient to support a valid medical diagnosis, but they do not constitute objective medical findings under KRS 342.0011(33). See Staples v. Konvelski, 56 S.W.3d 412 (Ky. 2001); Gibbs v. Premier Scale Co., 50 S.W.3d 754 (Ky. 2001).

reopening. Objective medical findings must show that the underlying injury causes greater impairment than at the time of the award.

In summary, KRS 342.125(1)(d) requires the medical evidence at the time of the award and at reopening to be compared. It permits a final award to be increased if the injured worker proves a post-award increase in disability as shown by objective medical evidence of a worsening of impairment. Only then does the question of the worker's entitlement to additional benefits under KRS 342.730(1)(a) or (b) arise. When the worker seeks a permanent increase in income benefits, the worker must show that the increased disability is permanent.

A worker seeking increased benefits at reopening must prove every element of the claim, including a change of disability significant enough to warrant modifying the award.[11] If an ALJ finds that the worker failed to meet that burden, the worker must show on appeal that the favorable evidence was so overwhelming as to compel a favorable result. [12]

The CALJ determined in the present case that the claimant made an adequate prima facie showing of a change of disability following surgery and assigned the claim for further proceedings. When the claimant reached MMI, ending her entitlement to TTD benefits,[13] the issue became whether objective medical findings showed a permanent increase in her disability since the award

---

[11] See Roark v. Alva Coal Corporation, 371 S.W.2d 856 (Ky. 1963).

[12] See Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986).

[13] See Central Kentucky Steel v. Wise , 19 S.W.3d 657 (Ky. 2000); Magellan Behavioral Health v. Helms, 140 S.W.3d 579 (Ky. App. 2004).

and, if so, whether the increase warranted additional permanent income benefits. The parties took proof, after which they submitted the matter for a decision on the merits. Applying the standard for showing a change of disability found in KRS 342.125(1)(d) and the definition of impairment found in Colwell, the ALJ determined that the award could not be modified because no objective medical evidence showed a worsening of impairment.

As the party seeking increased permanent income benefits, the claimant had the burden to prove a post-award change of disability as shown by objective medical evidence of a worsening of impairment. The ALJ's decision may not be disturbed because the claimant points to no such evidence.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT,
REBECCA DAWSON:

David R. Marshall
120 North Upper Street
Lexington, KY 40507


COUNSEL FOR APPELLEE,
CORNERSTONE CARE, LLC:

Hugh Brettelle Stonecipher
Ferreri & Fogle
300 East Main Street
Suite 400
Lexington, KY 40507