REALTY IMPROVEMENT
CO., INC., Appellant,

v.

Ricky RALEY, Deceased;  Harold W.
Raley.    Administrator;    Administra-
tive Law Judge;  and Worker's Com-
pensation Board, Appellees.

No. 2005–SC–0499–WC.

Supreme Court of Kentucky.

June 15, 2006.

Douglas A. U'Sellis, U'Sellis & Kitchen, PSC, Louisville, Counsel for Appellant.

John M. Lally, Louisville, Counsel for Appellee.

## OPINION OF THE COURT

Affirming a decision of the Workers' Compensation Board, the Court of Appeals determined that KRS 342.165(1) permits the benefit paid under KRS 342.750(6) to be increased by 30% if the accident causing the worker's death resulted from the employer's intentional safety violation. The court also determined that the failure of the administrator of the worker's estate to list the employer's correct address on the application for benefits and the Administrative Law Judge's (ALJ's) denial of the employer's request to reopen proof after the claim had been taken under submission did not deny the employer due process under the circumstances. We affirm.

On October 22, 2002, Ricky Raley sustained a closed head injury and died as a result of a 30–foot fall from the roof of a structure on which he was working. He had no widow, children, or other dependents. On October 29, 2003, the administrator of his estate filed a Form 101 application for workers' compensation benefits, listing the correct name and address of the employer's insurance carrier but listing the accident site instead of the employer's correct mailing address. The administrator sought death benefits under KRS 342.750 and asserted that the estate was entitled to a 30% increase in benefits under KRS 342.165(1) on the ground that Raley's death resulted from the employer's safety violations. Appended to the application were copies of two citations issued to the employer by the Kentucky Labor Cabinet based on inspections from October 22, 2002 through November 6, 2002. Directed to the employer at the correct address, the citations stated that the employer violated 29 CFR 1926.501(b)(11) (employees did not wear fall protection) and 29 CFR 1926.503(a) (employees were not provided fall protection training). They characterized the violations "serious" and proposed penalties totaling $3,000.00.

On December 22, 2003, the Department of Workers' Claims sent letters to the employer and its carrier at the addresses provided on the Form 101, informing them of the claim and stating that a scheduling order would be forthcoming. The Department sent the order on December 29, 2003. It came to light subsequently that the letter notifying the employer of the claim was returned to the Department as undeliverable and that the Department in-

formed the ALJ in a January 8, 2004, memo.

On January 13, 2004, counsel entered an appearance "as attorney of record for Defendant–Employer and Ladegast & Heffner." On January 20, 2004, counsel filed a notice of claim denial (Form 111), asserting that the employer had paid Raley's estate a lump sum of $54,089.28 under KRS 342.750(6) but denying that an additional penalty was authorized by KRS 342.165(1) or justified by the facts. On April 6, 2004, counsel offered to stipulate that the only contested issue was the estate's entitlement to a 30% safety penalty and stated that because the defense was purely legal, the employer would not present any evidence.

As stated in the order and memorandum of the April 16, 2004, benefit review conference, counsel for the parties agreed that the record was sufficient to allow a factual determination that the accident that resulted in Raley's death was caused in some degree by the employer's intentional failure to comply with a safety statute or regulation. They also agreed that the only contested issue concerned the applicability of KRS 342.165(1) to benefits payable under KRS 342.750(6), i.e., to lump-sum death benefits. The memorandum indicates that the parties were given 15 days to file briefs and that the claim would stand submitted as of May 1, 2004.

Although the administrator filed a timely brief, the employer submitted its brief on May 3, 2004. On May 10, 2004, the attorney representing the employer and insurance carrier filed a motion to remove the claim from submission and reopen proof time. The motion asserted that the attorney had attempted to contact the employer at the address listed on the Form 101 to determine the merits of the claimed safety penalty, that the employer failed to respond, and that the attorney obtained a correct address only after advising the carrier that the employer was failing to cooperate in the defense. It alleged that the attorney was in the process of obtaining information from the employer regarding whether the facts warranted a penalty. The motion asserted that the employer was unaware a claim had been filed or that proof was being taken and requested 30 days to take proof and present a defense.

Objecting, the administrator pointed out that he began discussions with the employer's insurance carrier shortly after Raley's death and that counsel had more than five months after the claim was filed to determine the correct address of his client or to inform the ALJ that he had been unable to contact his client. Yet, counsel had entered an appearance on the employer's behalf, filed a brief, and raised the matter only after the claim was submitted for a decision. The Administrative Law Judge (ALJ) denied the motion, noting in the subsequent opinion and award that the motion did not suggest the substance of the employer's evidence.

Based on the parties' stipulation, the ALJ determined ultimately that the employer's safety violation caused Raley's death. Convinced that a payment made under KRS 342.750(6) constituted "compensation" within the meaning of KRS 342.165(1), the ALJ imposed an additional 30% in compensation against the employer. Thus, Raley's estate received $54,089.28 under KRS 342.750(6) and an additional $16,226.94 under KRS 342.165(1).

The employer's petition for reconsideration asserted that KRS 342.165(1) did not apply to death benefits on the ground that they were neither income nor medical and related benefits and, therefore, were not considered to be "compensation" under KRS 342.0011(14). The petition complained that the ALJ should have inferred from the motion to reopen proof that the

employer intended to offer proof to contest a safety penalty. It asserted that, had the motion been granted, the former owner of the company would have testified regarding Raley's conduct on the morning of the accident and the availability of fall protection. The ALJ denied the petition, after which the employer appealed.

■ Several statutes are relevant to the matter at hand. KRS 342.730 permits injured workers to receive income benefits, the period and amount of which are based on the disability that results from the injury. If the worker dies from a non-work-related cause before the award expires, subsection (3) directs the continuation of portions of the worker's income benefits to certain dependents. If the worker dies as a result of the work-related injury, KRS 342.750 permits the surviving spouse, children under the age of eighteen, and certain actual dependents to receive income benefits that are greater than those authorized by KRS 342.730(3). *See Brusman v. Newport Steel Corp.*, 17 S.W.3d 514 (Ky.2000).

As amended effective July 14, 2000, KRS 342.750 provides:

> If [the worker's] injury causes death, *income benefits* shall be payable in the amount and to or for the benefit of the persons following, subject to the maximum limits specified in subsections (2) and (4) of this section: (emphasis added).

Subsection (1)(a) through (1) list various classes of dependents, and subsections (2) through (4) list factors that affect the amount of income benefits awarded under subsection (1). Subsection (5) explains that dependency is determined at the time of the accident. Subsection (6) dates to 1976 and in its present form provides:

> (6) In addition to other benefits as provided by this chapter, if death occurs within four (4) years of the date of injury as a direct result of a work-related injury, a lump-sum payment of fifty thousand dollars ($50,000) shall be made to the deceased's estate, from which the cost of burial and cost of transportation of the body to the employee's place of residence shall be paid. Annually, the executive director shall compute, in accordance with KRS 342.740, the increase or decrease in the state average weekly wage, and consistent therewith, shall adjust the amount of the lump-sum payment due under this subsection for injuries occurring in the succeeding year.

Subsection (7) provides that all benefits other than the lump sum provided in subsection (6) are subject to KRS 342.730(4), which terminates income benefits upon the recipient's eligibility for old-age social security benefits.

KRS 342.165(1) provides:

> If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, *the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment.* If the accident is caused in any degree by the intentional failure of the employee to use any safety appliance furnished by the employer or to obey any lawful and reasonable order or administrative regulation of the commissioner or the employer for the safety of employees or the public, the compensation for which the employer would otherwise have been liable under this chapter shall be decreased fifteen percent (15%) in the amount of each payment. (emphasis added).

KRS 342.165(1) promotes workplace safety by encouraging workers and employers to follow safety rules and regulations. *Apex Mining v. Blankenship,* 918 S.W.2d 225, 228 (Ky.1996). It also compensates the party that benefits from the increase or decrease for being subject to the effects of the opponent's intentional misconduct. *See AIG/AIU Ins. Co. v. South Akers Mining Co.,* 192 S.W.3d 687 (Ky.2006). KRS 342.0011 provides, in pertinent part, as follows:

> (12) "Income benefits" means payments made under the provisions of this chapter to the disabled worker or his dependents in case of death, excluding medical and related benefits.

> (13) "Medical and related benefits" means payments made for medical, hospital, burial, and other services as provided in this chapter, other than income benefits.

> (14) "Compensation" means all payments made under the provisions of this chapter representing the sum of income benefits and medical and related benefits.

The employer argues that KRS 342.0011(14) includes only income benefits and medical and related benefits in the definition of "compensation." Therefore, for the purposes of KRS 342.165(1), the term "compensation" refers only to income benefits. *Claude N. Fannin Wholesale Co. v. Thacker,* 661 S.W.2d 477 (Ky.App. 1983). Asserting that income benefits are paid only to disabled workers or their dependents, the employer argues that a death benefit paid under KRS 342.750(6) is not an income benefit and is a medical and related benefit only to the extent that it is used for burial costs.

As the employer has pointed out, even statutory terms that are defined must be construed in the context in which they are used. KRS 342.0011; *Claude N. Fannin Wholesale Co. v. Thacker, supra.* KRS 446.080(1) directs all statutes to be liberally construed in order to accomplish their intended purpose. As Raley's administrator notes, a purpose of KRS 342.165(1) is to promote workplace safety by encouraging both workers and employers to follow safety rules and regulations. *Apex Mining v. Blankenship, supra.* Yet, under the employer's interpretation of KRS 342.165(1) and KRS 342.750, it would be required to pay increased compensation for a safety violation that caused a non-fatal injury but would only be required to do so for a violation that caused a fatal injury if there were surviving dependents.

The lump sum authorized by KRS 342.750(6) is paid "in addition to other benefits," indicating that it, too, is a benefit. Although KRS 342.750(6) directs payment of the benefit to the deceased worker's estate, it is a subsection of KRS 342.750, which expressly authorizes "income benefits" that are payable to specified "persons" when an injury results in death. This implies that a deceased worker's estate is a "person" for the purposes of the statute and also that benefits authorized under subsection (6), like those under subsection (1), are income benefits. Consistent with that interpretation, KRS 342.750(6) provides for an annual adjustment in the amount of the lump sum based upon increases or decreases in the state's average weekly wage. Mindful that KRS 342.750 expressly refers to "income benefits" and that goals of KRS 342.165(1) are to encourage workplace safety as well as to compensate those who are victims of intentional safety violations, we are convinced that the legislature intended its use of word "compensation" to include payments made under KRS 342.750(6) as well as under KRS 342.750(1).

As the real party in interest, the employer was entitled to procedural due

process, including notice and an opportunity to be heard in this claim. *American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Commission,* 379 S.W.2d 450 (Ky.1964). 803 KAR 25:010, § 3(2) requires a workers' compensation claim to be served "on all parties," and § (3)3 requires all pleadings to be served on "all other parties ... or, if represented, to that representative, at the party's or representative's last known address."

It is undisputed that the claimant's Form 101 contained an incorrect address for the employer and consequently that the notice the Department of Workers' Claims sent to the employer was returned as undeliverable. Nonetheless, counsel entered an appearance on both the carrier's and the employer's behalf. Counsel subsequently filed a claim denial, participated in the benefit review conference, and entered into a stipulation regarding the employer's safety violation, conceding that there was no factual issue but asserting that KRS 342.165(1) did not apply to awards under KRS 342.750(6). The employer did not request proof time until after briefs were filed and the case submitted. Under the circumstances, the ALJ did not deny the employer due process by refusing to reopen proof or by denying the subsequent petition for reconsideration and request to set aside the award.

The decision of the Court of Appeals is affirmed.

All concur.