RENDERED: SEPTEMBER 28, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000252-WC

UNINSURED EMPLOYERS FUND      APPELLANT

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2015-CA-000993-WC

V.      WORKERS' COMPENSATION BOARD
NO. 13-WC-00273

JOSE ACAHUA; LUIS LOPEZ;      APPELLEES
ISAIAS SILVA-LAMAS; HON. THOMAS G.
POLITES, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD

## OPINION OF THE COURT BY JUSTICE KELLER

### AFFIRMING

An Administrative Law Judge (ALJ) found that Isaias Silva-Lamas became permanently and totally disabled as a result of a work-related injury that he suffered while employed by Luis Lopez, an uninsured employer. Those findings are not disputed. However, the Uninsured Employers Fund (UEF) contests whether Lopez was properly notified of Silva-Lamas's claim. The ALJ, the Workers' Compensation Board (the Board), and the Court of Appeals held that notice was properly given. We agree and affirm.

# I. BACKGROUND.

On April 11, 2012, Silva-Lamas, who was a month away from his 29th birthday, was working as a brick mason's helper when he fell from a ladder and suffered multiple cervical fractures. As a result, Silva-Lamas has no use of his legs, very limited use of his arms, and little to no use of his hands. In his initial application for resolution of injury claim, Silva-Lamas named Jose Acahua as his employer. Acahua did not have any workers' compensation insurance; therefore, the Chief ALJ joined the UEF as a party.

During the course of discovery, the parties determined that, at the time of his injury, Silva-Lamas was working on a house owned by Barry Chaney. Chaney and his wife decided to put a "brick and wood" porch on the back of their house. Chaney hired a contractor named Timberwolf to perform the framing and carpentry, and he intended to hire his brother-in-law, Stonie Newsome, to perform the masonry work. However, by the time Timberwolf completed its part of the construction, Newsome was too busy with other projects to do the masonry work. Therefore, Newsome had one of his employees, Jose Acahua, contact Luis Lopez to see if Lopez could do the work. Following some negotiations, Lopez agreed to do the work, and he enlisted Silva-Lamas and two others to assist him. Acahua did not perform any work on the job but acted as an interpreter among Lopez, his helpers, and Chaney, and Acahua apparently handled some of the monetary transactions between Chaney and Lopez, who acted as the "boss" on the job.

Based on the preceding evidence, Silva-Lamas moved to join Newsome and Lopez as defendant/employers. The ALJ denied Silva-Lamas's motion as to Newsome but granted it as to Lopez and sent a copy of the joinder order to Lopez by first-class mail. Following the ALJ's joinder order, Silva-Lamas filed a second Application for Resolution of Injury Claim, naming Lopez as his employer. The Commissioner of the Department of Workers' Claims (the DWC), pursuant to 803 KAR 25:010 Section 3, sent a copy of that application to Lopez via first class mail. The postal service returned that mailing stamped "undeliverable." Because it appeared that Lopez never received notice of the claim, the UEF contested the DWC's jurisdiction to proceed against him, and by extension, against the UEF. The ALJ rejected the UEF's argument, finding that, because Silva-Lamas had done all that was required of him to file his claim, the DWC had jurisdiction over Lopez.

The UEF appealed to the Board, which affirmed, agreeing with the ALJ that Silva-Lamas acted appropriately pursuant to 803 KAR 25:010 in filing his claim. The Board also found that the DWC acted appropriately pursuant to the regulation by serving the application on Lopez via first class mail. The UEF then sought review by the Court of Appeals, which affirmed.

As it did below, the UEF argues that, pursuant to Kentucky Revised Statute (KRS) 342.135, the commissioner of the DWC was required to serve notice of Silva-Lamas's claim by registered mail. According to the UEF, the commissioner's failure to do so deprived the ALJ of jurisdiction over Lopez and, by extension, over the UEF. For the reasons set forth below, we disagree and

3

affirm, albeit for different reasons than those expressed by the Board and the Court of Appeals.

## II. STANDARD OF REVIEW.

As a general rule, we grant deference to the findings of an ALJ; however, when the issue is purely a question of law, as this is, we review the matter *de novo*. *See Saint Joseph Hosp. v. Frye*, 415 S.W.3d 631, 632 (Ky. 2013).

## III. ANALYSIS.

KRS 342.270(1) states that, if the parties fail to reach an agreement as to compensation, "either party may make written application for resolution of claim." 803 KAR 25:010 Section 3(2) provided at the time that the application had to be "filed [with the DWC] with sufficient copies for service on all parties."[1] Once an application is filed, the commissioner of the DWC is required to "issue notice of the filing to all parties and" to "promptly assign the claim to an administrative law judge." KRS 342.270(2). Pursuant to 803 KAR 25:010 Section 3(2), the commissioner then serves the application "by first class mail."

As the UEF notes, the service provision of the preceding regulation appears to be at odds with KRS 342.135, which states in pertinent part that:

> Any notice required to be given under this chapter shall be considered properly given and served when deposited in the mail in a registered letter or package properly stamped and addressed to the person to whom notice is to be given at his last known address and in time to reach him in due time to act thereon. Notice may also be given and served like notices in civil actions.

---

[1] At the time of this litigation, the regulation referred to the commissioner as the "executive director." That has since been amended. Furthermore, in 2017, the regulation was amended to reflect the DWC's use of electronic filing rather than paper filing.

4

The UEF argues that KRS 342.135 requires that notice of a claim be served on the employer by registered mail, and that the DWC did not have jurisdiction over Lopez because the Commissioner failed to serve Lopez by registered mail. However, the UEF's interpretation of KRS 342.135 is faulty for two reasons.

First, the first sentence of KRS 342.135 states that notice given or served by registered mail is deemed adequate. That sentence does not state it is mandatory for notice to be given or served by registered mail or that registered mail is the only method by which notice may be given or served. If the General Assembly had wanted registered mail to be the only acceptable method to give or serve notice, it would have made that method mandatory; which leads us to the second reason the UEF's interpretation is faulty.

We presume that the General Assembly intended for the statute to be construed as a whole, and for all of its parts to have meaning. *Hall v. Hospitality Resources, Inc.*, 276 S.W.3d 775 (Ky.2008); *Lewis v. Jackson Energy Cooperative Corporation,* 189 S.W.3d 87 (Ky.2005). Looking at KRS 342.135 as a whole, it is clear that the General Assembly intended to provide two methods for notices to be given or served. The first is by registered mail, the second is pursuant to whatever method the civil rules deem adequate. We cannot, by adopting the UEF's interpretation, simply negate this second method by which notice may be given or served.

The UEF argues that this Court's opinion in *Nat. Resources & Environmental Protection Cabinet v. Pinnacle Coal Corp.*, 729 S.W.2d 438 (Ky.

5

1987) is on "all fours" with this matter. The UEF is mistaken. In *Pinnacle*, the Cabinet, pursuant to a regulation, served Pinnacle's attorney with the hearing officer's final report. *Id.* Pinnacle contested the adequacy of that service, noting that the relevant statute required service on the party, not on its attorney. *Id.* The Cabinet argued that service was adequate because it complied with the regulation, which required service on a represented party's attorney rather than on the party. *Id.* The Court held that service by the Cabinet was not adequate because the statute, not the regulation, controlled. *Id.* at 439. Unlike the statute at issue in *Pinnacle,* which made service on the party mandatory, the statute herein provides that service may be by registered mail, or by a method consistent with the civil rules. Therefore, *Pinnacle* is neither controlling nor persuasive.

The preceding does not dispose of this issue because we must determine if service was appropriate under the civil rules. Kentucky Rule of Civil Procedure (CR 5.01) provides that "every written notice . . . shall be served upon each party except those in default for failure to appear. Parties in default shall be given notice of pleadings asserting new or additional claims for relief against them by summons or warning order . . . ." CR 5.02 provides that, "whenever . . . service is required or permitted to be made[,] . . . [s]ervice . . . shall be made by . . . mailing [the thing to be served] to the . . . party at the last known address of such person."[2] Based on CR 5.01 and 5.02 the

___

[2] CR 5.02 has changed since this litigation. It now states "Service is complete upon mailing unless the serving party learns or has reason to know that it did not

6

Commissioner's mailing of notice of Silva-Lamas's claim to Lopez complied with the service requirements of the Civil Rules for three reasons.

First, at the time the notice was mailed, Lopez was not in default and the notice did not contain new or additional claims of relief as envisioned by the rule.[3] Second, because CR 5.02 provides no modifier to "mailing," any method of mailing, including first-class, is acceptable.[4] Third, taking the UEF's argument that all notices must be mailed by registered mail to its logical conclusion, the following would have to be made by registered mail: "notice of the accident," as required by KRS 342.185, "notice of the assignment of the claim to an [ALJ]" as required by KRS 342.272; an employee's written notice of rejection of the Act, as required by KRS 342.395; and notice of cancellation of insurance coverage as required by KRS 342.340. Requiring those notices to be sent by registered mail would put a substantial financial drain on injured workers and the workers' compensation system because the minimum charge

---

reach the person served." However, that language was not in the Rule at the time of this litigation.

[3] The new or additional claims referred to in CR 5.01 are claims that were not asserted in the initial complaint. In workers' compensation there are no "complaints." Furthermore, even if the application for adjustment of injury claim were deemed to be a complaint, the application filed against Lopez would have been tantamount to the initial complaint.

[4] This is consistent with the majority of references to the provision of notice to litigants by a governmental body. CR 76.04 provides that notice of entry of judgment shall be made by mail. CR 73.03 provides that the clerk shall serve notice that an appeal has been filed "by mailing a copy." CR 76.36 provides that the clerk shall mail to each respondent notice that an original proceeding has been filed in an appellate court. Furthermore, while references in the Rules to service of notice by parties do not specifically state that service is by mail, those rules default to CR 5.02's requirement.

7

for a registered mailing by the United States Post Office starts at $12.20.[5]
https://ribbs.usps.gov/shipproductsservices/documents/tech_guides/
ExtraServicesWebinar.pdf.

The UEF also argues that Lopez was entitled to notice of the claim as a matter of due process. Implicit in that argument is the notion that, if Lopez or any other employer simply cannot be served with notice of a claim, no liability can attach to the UEF. That implication is faulty because KRS 342.630 provides that employers are "mandatorily subject to" the provisions of the Act. As noted above, the Act provides that notice may be served pursuant to the Civil Rules, which do not require that notice must be received to be effective. Furthermore, KRS 342.760(4) provides that "[t]he [UEF] shall be responsible for the payment of compensation when there has been default in the payment of compensation due to the failure of an employer to secure payment of compensation as provided by this chapter[,]" i.e. by obtaining insurance or self-insuring. The liability imposed on the UEF by this statutory provision is contingent on the employer's status as insured, not on the employer's receipt of notice of the claim.

Finally, we note that service by registered mail does not guarantee that the addressee will receive the mailed documents. At best, registered mail guarantees that the post office attempted to make delivery and provides for a return if delivery was not possible. That is exactly what occurred with the

---

[5] While such economic concerns are best left to the General Assembly, we note this cost differential because the purpose of registered mail is to provide insurance for what is being mailed. It is not to ensure delivery.

8

Commissioner's first-class mailing of the notice herein. Therefore, whether the Commissioner had mailed the notice of claim by registered mail or by the method provided for in the regulation, the result would have been the same.

## IV. CONCLUSION.

For the foregoing reasons, the Court of Appeals is affirmed.

Minton, C.J.; Cunningham, Hughes, Keller and Venters, JJ., concur. Wright, J., dissents by separate opinion. VanMeter, J., not sitting.

WRIGHT, J., DISSENTING: I respectfully dissent from the majority opinion affirming the Court of Appeals. I would, instead, reverse the Court of Appeals, vacate the ALJ's order, and remand the case, as the DWC failed to properly notify Lopez.

KRS 342.135 says that "any notice" required under the Kentucky Workers' Compensation Act is "considered properly given and served" when mailed via "registered letter or package" to the recipient's last known address. In this case, the Department of Workers' Claims sent Lopez notice of the claim via first-class mail to his last known address, which was returned stamped "undeliverable." The Department's first-class mailing was insufficient to allow the absent employer (Lopez) to be considered constructively noticed of documents initiating the claim against him. Further, it is undisputed that Lopez never received actual notice of Silva-Lamas's claim. Therefore, there was no jurisdiction over Lopez.

The UEF claimed (and I agree) that the first-class mailing did not comply with KRS 342.135, which governs the sending of notices required under

9

Chapter 342 and provides that such notices are "considered properly given and served" if sent by "registered" mail. Because the notice here was sent by first-class and not registered mail,[6] it was ineffective to serve as constructive notice to Lopez under the Act. Therefore, the ALJ's ordering Lopez liable for Silva-Lamas's compensation cannot stand, because due process requires that the employer be given notice of a claim before he can be made to pay it.

At its core, the statutory-interpretation question before us is about procedural due process—to wit, how much process is due employers under our Workers' Compensation Act, KRS Chapter 342 (the Act).

Parties that stand to be affected by an administrative order are entitled to procedural due process. *Am. Beauty Homes Corp. v. Louisville & Jefferson Cty. Planning & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964). At the most fundamental level, this requires reasonable notice and an opportunity to be heard. *Bd. of Levee Comm'rs v. Johnson*, 199 S.W. 8, 12 (Ky. 1917). Employers, as real parties in interest, are thus entitled to be given notice of their employees' work-injury claims and afforded an opportunity to contest

---

[6] According to the United States Postal Service website, *first-class* (or regular) *mail* is "the least expensive, most immediate option for mailing postcards, letters, and large envelopes 13 ounces or less." *What is First-Class Mail?*, USPS.com, faq.usps.com/?articleId=218984 (last accessed May 10, 2017) ("First-Class mail over 13 ounces is called Priority Mail.").

*Registered mail*, on the other hand, is "the most secure USPS mail service (protected by safes, cages, sealed containers, locks and keys)." *What is Registered Mail?*, USPS.com, http://faq.usps.com/?articleId=220838 (last accessed May 10, 2017). It uses a "system of receipts . . . to monitor the mail from the point of acceptance to delivery." *Id.* Its "delivery status or attempted delivery status" is available to the sender, and a signature is required upon delivery. *Id. See also registered mail*, Black's Law Dictionary (10th ed. 2014) ("Mail that the U.S. Postal Service records at the time of mailing and at each point on its route so as to guarantee safe delivery.").

them. *Realty Improvement Co. v. Raley*, 194 S.W.3d 818, 822–23 (Ky. 2006). Here, the issue is the first requirement: notice.

The Act expressly addresses the due-process notice requirement. First, it puts the burden on the DWC commissioner to give notice to all parties that an application for resolution of claim has been filed. KRS 342.270(2). Although both employees and employers are empowered to file such applications if the parties can't come to an agreement outside litigation, *see* KRS 342.270(1), the typical scenario involves an employee filing a claim alleging a work-related injury, which the employer then has 45 days to answer, *see* KRS 342.270(2). If the employer does not file an answer, "all allegations of the application shall be deemed admitted." 803 KAR 25:010 § 7(2)(b).

Second, the Act dictates in clear terms how the KRS 342.270(2) notice (or any other notice required under KRS Chapter 342[7]) is to be given: "in a registered letter or package properly stamped and addressed to the person to whom notice is to be given at his last known address and in time to reach him in due time to act thereon." KRS 342.135. It also allows for notices to "be given and served like notices in civil litigation." *Id.* (As discussed in more detail below.) Notices that comply with these directives, the statute adds, "shall be considered properly given and served when deposited in the mail." *Id.*

---

[7] The Court of Appeals read KRS 342.135 as applying only to "pre-claim notice." That misreading helps explain that court's mistaken conclusion that the administrative regulation directing the DWC to issue notices by first-class mail does not conflict with KRS 342.135's registered-mail requirement. We discuss that regulation and conflict in more detail below.

11

Thus, KRS 342.135, by its terms, has two distinct purposes: (1) to define how notice is given and served—by "registered" mailing to the recipient's last known address or else in the same manner as in civil actions; and (2) to stipulate that compliant notices are "considered properly given and served" when mailed—that is, to provide for effective constructive notice. These purposes are intended to ensure that parties to be affected by a workers' compensation order receive the process that they are due.

The question here is whether the commissioner's first-class mailing was sufficient to satisfy the Act's due-process requirements so as to subject the absent employer, Luis Lopez, to the ALJ's order against him. The majority holds that it was—but, I disagree.

Simply put, Lopez received neither actual nor constructive notice of Silva-Lamas's claim. There is no evidence that Lopez was ever actually notified of the claim—the mailing, after all, was returned undelivered. More importantly, the DWC's mailing did not comply with KRS 342.135—it was sent via first-class and not registered mail. Because the attempted notice was not sent by registered mail, the statute's terms do not allow it to be "considered properly given and served." In other words, the first-class mailing did not provide constructive notice of the claim under the Act.

First, I note that KRS 342.270 governs the filing of claims and the DWC commissioner's obligations when a claim is filed. But it says only that "the commissioner shall issue notice of the [application-for-resolution-of-claim] filing to all parties." KRS 342.270(2). Although it says nothing in express

12

terms about how that is to be given, it implicitly does so by calling it "notice"—KRS 342.135, again, lays out how "any notice" is given. The statute then concludes by directing the commissioner to "promulgate administrative regulations establishing procedures for the resolution of claims." KRS 342.270(3).

Exercising that authority, the commissioner crafted the regulation that was relied on below to sign off on the notice given here, 803 KAR 25:010 section 3(2).[8] The regulation begins by directing the filing party to file its application "with sufficient copies for service on all parties." *Id.* It then directs the commissioner to "make service by first class mail." *Id.* Therefore, the Board and Court of Appeals reasoned that the DWC's first-class mailing was an effective notice because this regulation required that it be sent in that manner.

Regulations, however, are subordinate to statutes—where their directives conflict, the statute wins. To the extent the commissioner's regulation directs KRS 342.270(2) notices to be sent by first-class mail, it is in direct conflict with, and invalidated by, the statutory registered-mail requirement. Nothing in the language of KRS 342.135 suggests that it applies to anything less than any and every notice that is required under Chapter 342. By its terms, it defines how "any notice" is given and served—that doubtlessly includes the initiating document that provides notice of a claim filing that the commissioner must

_____

[8] The Board and Court of Appeals relied on the language in what was then section 3(2), but the regulation has since been amended effective October 2016. Section 5(3)(b) now contains the language at issue, which is virtually unchanged. We use section 3(2) in our discussion, however, to be consistent with those below.

13

give under KRS 342.270(2). "Administrative agencies are bound by the procedural dictates of the statutes and are not empowered to adopt regulations in conflict with plain statutory provisions." *Natural Res. & Envtl Prot. Cabinet v. Pinnacle Coal Corp.*, 729 S.W.2d 438, 439 (Ky. 1987). Because 803 KAR 25:010 section 3(2) purports to require the commissioner to send notices in a manner that differs from and directly conflicts with what KRS 342.135 requires, it has no force and cannot validate the noncompliant notice that was attempted here.

The majority reasons that KRS 342.135 does not require that notice be given or served by registered mail, but that such notice is merely "deemed adequate." It goes on to assert that there are two methods for giving notice: first, by registered mail; or, second, by any means notices may be served in civil actions.

This Court had previously held in *Akers v. Pike County Board of Education*, 171 S.W.3d 740 (Ky. 2005), that the commissioner was not subject to KRS 342.135's registered-mail requirement, albeit in a different context concerning a different statutory obligation. At issue in *Akers* was the commissioner's obligation under KRS 342.040(1) to "in writing, advise the employee . . . of right [sic] to prosecute a claim under [the Act]" (which arises after the employer or its insurance carrier notifies the commissioner that it has terminated temporary-total-disability (TTD) income-benefit payments). In *Akers*, after the employer ceased paying TTD, the commissioner sent the employee the required so-called "statute letter"—advising him of his right to file

14

a claim under the Act within two years after the TTD-termination date—by first-class mail. *Id.* at 741. It is impossible to consider this a document initiating a claim. The employee would be aware that he should inquire what to do after the payments stopped. When the employee filed his claim more than four years later, he argued that it should not be time-barred because, among other things, the commissioner's letter, which he never received, failed to comply with KRS 342.135's registered-mail requirement. *Id.* This Court rejected that argument, holding that KRS 342.135 does not apply to the commissioner's obligation under KRS 342.040(1). *Id.* at 742.

But what distinguishes *Akers* from this case is that the issue there turned on the Court's recognizing that "notice," as used in KRS 342.135, is a legal term of art, which the legislature has employed in some instances and not others. Presuming that "the legislature had a reason for its choice of words," *id.* (citing KRS 446.080(4)), the Court concluded that the choice in KRS 342.040(1) to require only that the commissioner "advise" employees of their right to prosecute a claim under the Act meant that obligation was not subject to the requirements for giving "notice" under KRS 342.135. *Id.* But here, by contrast, the legislature's choice in KRS 342.270(2) was to require that the commissioner indeed give "notice." I disagree with the majority's interpretation of KRS 342.135. It does disservice to the legislative choice evident in the drafting of that statute—much as holding the statute applicable in Akers would have disserved KRS 342.040(1)'s choice of words.

15

Further distinguishing *Akers* from this case is the substantive difference between the commissioner's obligations under KRS 342.040(1) and KRS 342.270(2). The former is effectively a statutorily required courtesy— think: "Just so that you are aware, you have the right to file a claim for benefits under the Act and have two years to do so." That is very different from the latter: "Be aware that a claim has been filed against you that might result in an ALJ ordering you to pay this person a sum of money (and almost certainly will result in that if you fail to file an answer)." The primary purpose for the KRS 342.270(2) notice is to ensure that all parties receive due process; there is no due-process purpose underlying the KRS 342.040(1) obligation. The "notice" requirement in KRS 342.270(2) necessarily contemplates the due-process procedures contained in KRS 342.135, the "advise" requirement in KRS 342.040(1) does not.

The focus here should not be on what Silva-Lamas did to comply with the Act's filing requirements. But, because at its core the issue here is about due process, the proper focus is on the absent employer, Lopez, not the employee. The question is not whether Silva-Lamas's actions sufficed to allow his claim to go forward; the question is whether Lopez received sufficient notice to permit the ALJ to enter an order affecting him. Answering the question presented requires assessing the process Lopez received and ascertaining whether that complied with the statute and, by extension, the requirements of procedural due process.

16

I respectfully dissent from the majority's holding that notices may be given "pursuant to whatever method the civil rules deem adequate." That issue has never been raised, argued, briefed, or considered by any party or tribunal in this case. This Court is ill-suited to address in this appeal the meaning of the second sentence in KRS 342.135, and so should not. That is best left to a future case where the issue is properly before us.

As the majority holds, CR 5.01 and 5.02 dictate what KRS 342.135's second sentence means. This would seem to allow all "notices" in civil actions to be effectuated by a mailing of any sort, and so would control the result here. To arrive at that conclusion, the majority begins by telling us that "CR 5.02 provides that 'whenever . . . service is required or permitted to be made . . . . [s]ervice . . . shall be made by . . . mailing [the thing to be served] to the . . . party at the last known address of such person.'" Because CR 5.01 directs that every "written notice . . . shall be served upon each party," the majority concludes that the two rules read together authorize notices in civil actions— and so also "notices" in workers' compensation litigation under KRS 342.135— to be mailed by any method the mailer chooses. If we fill in the gaps, however, it is apparent that CR 5.01 and 5.02 do not apply here at all.

First, the majority concludes that KRS 342.270(2)'s "notice" should be considered equivalent to the "written notice" used in CR 5.01. The problem with that construction is that the workers' compensation notice at issue is not a simple notice of filing or deposition or some other pleading in the midst of litigation; it is the initiating or original complaint against the employer by the

17

employee claiming workers' compensation benefits. Indeed, CR 5.01 applies to "every pleading *subsequent to the original complaint.*" (Emphasis added.) The notice here was the document initiating the claim against Lopez and so is not covered by the rules governing the servicing and filing of pleadings and other papers—CR 5.01, *et seq.* Instead, our rules governing service of process— CR 4.01,[9] *et seq.*—control how the notice to the employer required under KRS 342.270(2) is considered given as in civil actions under KRS 342.135.[10] The last sentence of CR 5.01 specifically provides that "[p]arties so in default shall be given notice of pleadings asserting new or additional claims for relief against them by summons or warning order issued thereon as provided in Rule 4."

The language of CR 5.02 makes it clear that it is inapplicable to the case before us. The relevant portion of that rule reads:

> Whenever under these rules service is required or permitted to be made upon *a party represented by an attorney,* which shall not include a warning order attorney, the service shall be made *upon the attorney* unless service upon the party is ordered by the court. Except as provided in paragraph (2) of this rule,[11] service upon the attorney or upon a party shall be made by delivering a copy to

---

[9] CR 4.01 governs the issuance of summonses "[u]pon the filing of the complaint (or other initiating document)," CR 4.01(1), and directs the court clerk to mail a copy of the summons and initiating document "in the United States mail as registered mail or certified mail return receipt requested with instructions to the delivering postal employee to deliver to the addressee only and show the address where delivered and the date of delivery," CR 4.01(1)(a).

[10] It bears repeating, however, that a well-reasoned, deliberate analysis of what the General Assembly meant by allowing that "[n]otice may also be given and served like notices in civil actions," KRS 342.135, should wait for another day and case when that question is actually before us.

[11] CR 5.02(2) governs elections by attorneys and parties to effectuate and receive service by electronic means.

18

the attorney or party or by mailing it to the attorney or party at the last known address of such person; or, if no address is known, by leaving it with the clerk of the court.

CR 5.02(1) (emphasis added). The rule's first clause unmistakably limits its scope: it applies only where "service is required or permitted to be made upon a party represented by an attorney." *Id.* Lopez would only have had an attorney representing him in the claim if he had been served with the initiating document and hired an attorney to enter an appearance for him. Lopez, of course, had no such representation. That, alone, renders CR 5.02 inapplicable here. But there's more—even if Lopez had been represented by an attorney so as to bring him within the scope of CR 5.02, the rule goes on to direct that "service shall be made upon the attorney." *Id.* Only if it is "ordered by the court," does the rule then permit service to be made upon the party instead of the attorney. *Id.* There, of course, was no such court order directing that service be made upon Lopez rather than his attorney. Again, CR 5.02 has no role to play here.

Finally, the majority's interpretation of KRS 342.135's second sentence would render that provision's first, main sentence meaningless. If the second sentence says that notices can be sent by any method of mailing, then the first sentence's registered-mail directive becomes no directive at all. *See generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174–79 (2012) (discussing the surplusage canon of statutory interpretation).

19

Whatever the second sentence in KRS 342.135 means, it does not mean that the notice mailed to Lopez was effective in serving a document initiating a claim against him. Having said that, I am not blind to the majority's worries about the costs entailed by requiring that every notice, or even just the documents initiating a claim, under Chapter 342 be sent by registered mail versus cheaper alternatives. As discussed above, CR 4.01, *et seq.*, governs the service of a document initiating a claim. After a party has been served with the initiating document, CR 5.01, *et seq.*, allows for service of pleadings by other, less expensive methods. While that is a worthy concern, it has no place in this Court's statutory analysis. That is a policy matter reserved to the General Assembly. It is the General Assembly who saw fit to require that notices under Chapter 342 be sent by the pricier method of registered mail—it is that body alone who has the power to change it.

To be certain, I recognize and agree with the sentiments expressed in the decisions below that reversing and dismissing Silva-Lamas's claim for this procedural error—which of course was not his error—would be unfair and serve only to undermine the Act's fundamental compensatory purpose. But I can account for that recognition in crafting a remedy: the proper remedy for the defective notice is to unwind the case, not dismiss it, and allow for the defect to be cured—that is, for Lopez to be given proper notice before adjudicating Silva-Lamas's claim.

Because the failed notice to Lopez was never "considered properly given and served" under KRS 342.135, I would vacate the order and award and

20

remand this matter to the ALJ for further proceedings. On remand, there would be nothing to prevent the commissioner, or anyone else for that matter, from properly serving notice to Lopez of Silva-Lamas's claim. I would leave it up to the ALJ: if the ALJ were convinced that this notice meets the Act's requirements, then I would allow him to proceed with adjudicating the claim against Lopez. I recognize that this result further delays the injured worker's receipt of benefits, and so may be unsavory to some—yet it is a result that is dictated by our statute and the principles of due process.

In sum, due process requires that employers receive notice of their employees' workers' compensation claims. The language of KRS 342.135 is clear: for "any notice" required under the Workers' Compensation Act to be "considered properly given and served," it must be sent by registered mail or in the same manner as civil-action notices. Because the commissioner mailed Lopez the KRS 342.270(2)-required notice initiating the claim against him by first-class rather than registered mail, that notice cannot be considered properly given and served. Therefore, I would vacate the ALJ's order and award and remand this matter for further proceedings.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

James Robert Carpenter
Assistant Attorney General


COUNSEL FOR APPELLEE, ISAIAS SILVA-LAMAS:

Charles E. Jennings
Joy Buchenberger
Jennings Law Offices


Jose Acahua, *Pro se*

Luis Lopez, *Pro se*