OPINION OF THE COURT BY JUSTICE HUGHES
After Farley Sargent II was fatally injured while working in a Pike County mine in June 2012, his statutory beneficiaries settled their workers' compensation claims with his employer, McCoy Elkhorn Coal Corporation, leaving only a bifurcated issue regarding enhanced benefits. Specifically, Kentucky Revised Statute (KRS) 342.165(1) provides for a 30% increase of any workers' compensation payments that would otherwise be due if the accident at issue was caused in any degree by the employer's failure to comply with statutes or administrative regulations regarding workplace safety. The Administrative Law Judge (ALJ) held that Sargent's survivors and estate were entitled to this enhanced benefit and that finding, having been affirmed by the Workers' Compensation Board (Board), was not appealed. The issue of first impression presented to the Court of Appeals and now this Court, however, is whether the Kentucky Coal Employers Self-Insurers Guaranty Fund (Guaranty Fund), which assumed the obligations of its now insolvent member, McCoy Elkhorn, can be held responsible for the 30% enhancement arising from the employer's safety violations. Finding that the Court of Appeals correctly concluded that the Guaranty Fund is fully responsible *804 for McCoy Elkhorn's workers' compensation liabilities, including the 30% enhancement, we affirm.
RELEVANT FACTS
Sargent was killed on June 25, 2012, when a rib of coal fell on him while he was working as an outby foreman for McCoy Elkhorn. The United States Department of Labor Mine Safety and Health Administration (MSHA) investigated the accident and ultimately cited the employer for three violations. The ALJ later identified those violations as follows: " 30 CFR 75.202(a) pertinent to adequate support of ribs, 30 CFR 75.220(a)(1) pertaining to compliance with the approved roof control plan, and 30 CFR 75.360(b)(1) pertaining to pre-shift examinations." As a result of these violations, the ALJ determined that Sargent's statutory beneficiaries-his widow, his children and his estate-were entitled to benefits enhanced by 30%, as mandated by KRS 342.165(1).
Subsequent to McCoy Elkhorn's settlement of the beneficiaries' claims for workers' compensation death benefits pursuant to KRS 342.750, the Guaranty Fund assumed the benefit obligations of McCoy Elkhorn upon the insolvency of that company and its parent, James River Coal Company (James River). However, the Guaranty Fund contested whether the 30% safety violation enhancement was appropriate and, if so, whether the Guaranty Fund, a statutorily-created entity, was obligated to pay it. The Sargent beneficiaries prevailed on both issues before the ALJ and the Board.
On appeal to the Court of Appeals, the Guaranty Fund no longer challenged the finding of intentional safety violations by McCoy Elkhorn justifying benefit enhancement pursuant to KRS 342.165(1), but it continued to maintain that it was not responsible for the 30% enhancement because guaranty funds are not responsible for "any penalties or interest" pursuant to KRS 342.910(2). The Court of Appeals rejected this argument as contrary to the legislative purpose underlying workers' compensation guaranty funds, which is to protect the benefits owed to employees and their beneficiaries by insolvent self-insured employers. The appellate court also rejected the characterization of the 30% enhancement as a penalty and affirmed the Board's opinion that the Guaranty Fund was responsible for the full amount of the benefits awarded to Sargent's beneficiaries.
ANALYSIS
Due to Sargent's death in a workplace accident, his widow, children and estate were awarded regular death benefits pursuant to KRS 342.750. Citing the documented MSHA violations, the ALJ further held that enhanced benefits were appropriate pursuant to KRS 342.165(1), which provides in relevant part:
If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment.
As noted, the propriety of the 30% enhancement is no longer a contested issue but, the Guaranty Fund, citing its statutory origins and controlling law, maintains that it cannot be held responsible for this 30% increase in the normal death benefit attributable to the employer's safety violations.
*805 In AIG/AIU Ins. Co. v. South Akers Mining Co., 192 S.W.3d 687 (Ky. 2006), this Court rejected a somewhat similar argument by an employer's workers' compensation insurance carrier based on limiting language in the parties' insurance contract. The contract specifically excluded the carrier's liability for any excess benefits attributable to the employer's serious misconduct or failure to comply with safety laws and regulations. Despite this limiting language, this Court unanimously held the insurance carrier responsible for the KRS 342.165(1) -enhanced benefits owed to the widow and surviving child of a deceased miner, stating
Although freedom of contract is a basic right, the legislature has determined that an employer's entire liability for workers' compensation benefits must be secured as a matter of public policy. KRS 342.340(1) ; KRS 342.365 ; and KRS 342.375. Therefore, workers' compensation insurance policies must comply with Chapter 342 by covering the employer's entire liability, including the liability imposed by KRS 342.165(1). See Beacon Insurance Company of America v. State Farm Mutual Insurance Company, 795 S.W.2d 62 (Ky. 1990). This assures that injured workers or their surviving dependents will receive all of the benefits to which they are entitled.
Id. at 688. The Court acknowledged that the enhanced benefit was often referred to as a safety penalty but observed that nothing in the statute designated it as such. Id. at 689. The legislature did not refer to it as a penalty nor did it include the provision in KRS 342.990, the part of the workers' compensation statute specifically designated as "Penalties." Id. Accordingly, the insurance carrier was responsible for the employer's entire liability, including the heightened liability arising under KRS 342.165(1).
The Guaranty Fund observes, correctly, that AIG/AIU focuses on the obligations of workers' compensation insurance carriers. The Guaranty Fund is not an insurance carrier,[1] but rather a creature of statute. KRS 342.900 contains a clear statement of the legislative purpose in establishing self-insurance guaranty funds:
(1) The General Assembly hereby finds and declares that the establishment of self-insurance guaranty funds is a necessary component of a complete system of workers' compensation, to make provisions for the general welfare of workers and their dependents, to relieve the consequences of any industrial injury or death, and to secure the payment of workers' compensation benefits provided by this chapter.
(2) The General Assembly further finds and declares that provision must be made for the continuation of workers' compensation benefits otherwise delayed or terminated due to the failure of a self-insured employer to meet obligations because of insolvency. It is for that purpose that the General Assembly establishes mechanisms requiring the establishment of three (3) distinct nonprofit, unincorporated guaranty associations, one (1) of whose members shall be composed of individually self-insured employers excluding individually self-insured coal employers and public-sector employers; one (1) shall be *806 composed of self-insured groups created pursuant to KRS 342.350(4) and KRS 304.50-010 ; and one (1) shall be composed of individually self-insured coal operators.
The Guaranty Fund was created by KRS 342.906(3), which provides for a "coal employers self-insurance fund to function as a guaranty fund for individually self-insured coal employers to secure workers' compensation liabilities under this chapter...." Subsection (4) elaborates that all three guaranty funds were created "for the purposes of meeting the obligations of insolvent individually self-insured employers ...." (emphasis supplied). Finally, KRS 342.906(9) states that "[a]ll moneys in the individual guaranty funds, exclusive of costs reasonably necessary to conduct business, shall be used solely to compensate persons entitled to receive workers' compensation benefits from a Kentucky member who has defaulted...." (emphasis supplied). In sum, the guaranty funds were created as a safety net for injured workers and their statutory beneficiaries when a self-insured employer becomes insolvent.
All the foregoing statutory provisions reflect a legislative intent that the Guaranty Fund step in and meet, without qualification, the "obligations" of its insolvent member, McCoy Elkhorn, and its parent, James River. Despite the mandatory language regarding "obligations" and "entitled" beneficiaries, the Guaranty Fund insists that its commitment does not extend to the mandatory 30% benefit enhancement premised on McCoy Elkhorn's safety violations. The Guaranty Fund points to KRS 342.910(2), which states in relevant part that "each guaranty fund shall not be liable for the payment of any penalties or interest assessed for any act or omission on the part of any person, including but not limited to the penalties provided in this chapter." In the Guaranty Fund's view, KRS 342.165(1) -enhanced workers' compensation benefits equate to a penalty.
As we acknowledged in AIG/AIU, this Court has occasionally used "penalty" as a "metaphor" for the KRS 342.165(1) 30% enhancement for safety violations[2] but it is not actually a penalty in the sense of being punitive, but rather an "increase ... to compensate the party that benefits from it for the effects of the opponent's misconduct." 192 S.W.3d at 689. We noted in AIG/AIU , that if the legislature had viewed it as a penalty it would have been included in KRS 342.990. That lengthy statute, dedicated exclusively to workers' compensation penalties, begins with the premise that "[t]he commissioner [of the Department of Workers' Claims] shall initiate enforcement of civil and criminal penalties imposed in this section." KRS 342.990(1). Clearly, the workers' compensation statute distinguishes penalties pursued by the commissioner for statutory violations from an increase in benefits premised on an employer's safety violations. Penalties are sought by the commissioner and paid to the Uninsured Employers' Fund pursuant to KRS 342.760(3),[3] while the KRS 342.165(1) enhancement is sought by a compensation claimant to increase his or her personal benefits where the circumstances merit it. Under KRS 342.165(1), upon establishment of a safety *807 violation, the benefit enhancement is mandatory, i.e., a benefit the person is "entitled to receive." KRS 342.906(9).
Construing the reference to "penalties or interest" in KRS 342.910(2) as relieving a self-insured guaranty fund of responsibility for enhanced benefits, as the Guaranty Fund posits, would require us to ignore the obvious distinction between workers' compensation penalties ( KRS 342.990 ) and benefit enhancement ( KRS 342.165(1) ). Perhaps more significantly, it would require us to ignore the legislative declaration that guaranty funds exist to meet the workers' compensation obligations of insolvent self-insured employers-"to secure the payment of workers' compensation benefits provided by this chapter." KRS 342.900(1).
Finally, the Guaranty Fund insists that even if the enhancement is its responsibility, any interest on the amounts owed should not be, again relying on KRS 342.910(2) 's reference to the Guaranty Fund's exemption from "penalties or interest assessed for any act or omission on the part of any person...."[4] Interest accrues on past-due workers' compensation benefits pursuant to KRS 342.040(1).
In Bradley v. Commonwealth, 301 S.W.3d 27 (Ky. 2009), this Court addressed the liability of the Uninsured Employers' Fund[5] for interest on past-due lump sum death benefits that had been enhanced, as in this case, by 30% pursuant to KRS 342.165(1) for a safety violation. The Uninsured Employers' Fund is statutorily "responsible for the payment of compensation" where the employer has failed to secure payment of any workers' compensation liability through insurance or self-insurance. KRS 342.760(4). After noting that the death benefit was a form of income benefit subject to the 30% enhancement, the Bradley Court stated the following with respect to interest:
Realty Improvement [Co. v. Raley, 194 S.W.3d 818 (Ky. 2006) ] established that a deceased worker's estate is a person for the purposes of KRS 342.750 and that a lump-sum death benefit is a form of income benefit. Among the rights of a "person receiving compensation" is the right to an award that includes interest on past-due income benefits as provided by KRS 342.040(1). Thus, the UEF's responsibility and its right of subrogation under KRS 342.760(4) include the portion of the award that represents interest.
Id. at 31.
We find this analysis in an analogous case persuasive. Just as the Uninsured Employers' Fund steps in where the employer is uninsured, the Guaranty Fund (like its two statutory counterparts consisting of other non-coal employers) steps in where the self-insured employer is insolvent to provide workers' compensation beneficiaries the same full benefits they were entitled to from the employer. Interest on past-due benefits is part of that full benefit and thus part of the Guaranty Fund's statutory obligation. To the extent KRS 342.910(2) renders a guaranty fund "not be liable for the payment of any penalties or interest assessed for any act or omission on the part of any person," we construe the interest referred to as that interest that accrues on penalties imposed *808 pursuant to KRS 342.990, not interest on overdue benefits owed to beneficiaries.
In sum, the statutory death benefits owed to Sargent's widow, children and estate, including the 30% enhancement and interest, are the statutory responsibility of the Guaranty Fund. Accordingly, we affirm.
All sitting.
All concur.

KRS 342.0011(22) defines "insurance carrier" as "every insurance carrier or insurance company authorized to do business in the Commonwealth writing workers' compensation insurance coverage and includes the Kentucky Employers Mutual Insurance Authority and every self-insured group operating under the provisions of this chapter."

The questionable reference to a "penalty" appears in Apex Mining v. Blankenship, 918 S.W.2d 225 (Ky. 1996) ; Whittaker v. McClure, 891 S.W.2d 80 (Ky. 1995) ; and Ernest Simpson Constr. Co. v. Conn, 625 S.W.2d 850 (Ky. 1981).

KRS 342.760(3) states: "All amounts collected as fines and penalties under this chapter shall be paid into the uninsured employers' fund."

The Guaranty Fund did not preserve this issue and the Court of Appeals did not address it. In the interest of judicial economy, we choose to address it.

Like the Guaranty Fund, the Uninsured Employers' Fund is a creature of statute but it differs in the sense that it is not a nonprofit, unincorporated legal entity but rather a fund under the control of the secretary of the Labor Cabinet. KRS 342.760.