RENDERED: FEBRUARY 18, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0055-WC

CHARLES MARTIN　　　　　　　　　　　　　　　　　　　　　APPELLANT


ON APPEAL FROM COURT OF APPEALS
v.　　　　　　　　　　　　NO. 2018-CA-1430
WORKERS' COMPENSATION BOARD NO. WC-17-01688


WARRIOR COAL LLC; HON. JEFF V.　　　　　　　　　　APPELLEES
LAYSON, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD


**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING**

Prior to revision by the 2017 Kentucky General Assembly, KRS[1] 342.040 provided for 12% interest on workers' compensation income benefits that were due but unpaid. After an amendment effective June 29, 2017, the statute now provides for an interest rate of 6% on due but unpaid benefits except in those instances where non-payment was "without reasonable foundation."[2] Appellant Charles Martin experienced a compensable injury on April 1, 2016, filed a claim in October 2017 and was awarded income benefits by an Administrative Law Judge (ALJ) on April 27, 2018. Although both the ALJ and the Workers' Compensation Board concluded that the 12% interest rate

---

[1] Kentucky Revised Statute.

[2] In 2018 the General Assembly added a provision that if delayed payment is caused by the employee, no interest shall be due. *See infra* n.7.

continues to apply to that portion of Martin's benefit award attributable to the period prior to the June 29, 2017 effective date of the statutory amendment, the Court of Appeals reversed, finding the 6% interest rate applicable to all of Martin's due but unpaid benefits. Having carefully considered the legislative act by which the General Assembly amended KRS 342.040, we conclude that, absent the aforementioned "without reasonable foundation" exception, the legislative intent was to make all portions of any income benefits award entered after June 29, 2017 subject to the 6% interest rate. Therefore, we affirm the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

Charles Martin filed a claim for work-related injuries as a result of his employment with Warrior Coal. In an April 27, 2018 Opinion and Order, the ALJ found that Martin sustained work-related cumulative trauma to his left shoulder on April 1, 2016 and awarded benefits. With respect to interest, the ALJ ordered that "all unpaid installments of compensation awarded herein shall carry interest at the rate of 12% per annum on all due and unpaid installments of such compensation through June 28, 2017 and 6% per annum on all due and unpaid installments of such compensation on or after June 29, 2017." The ALJ applied the 6% interest rate on unpaid installments beginning June 29, 2017 to comply with House Bill 223 enacted by the 2017 General Assembly. 2017 Ky. Acts ch. 17.

Warrior Coal petitioned for reconsideration of several issues, including the ALJ's decision to award interest at the 12% rate for all unpaid installments

2

due prior to June 28, 2017.  The ALJ declined reconsideration.  On Warrior Coal's appeal, the Workers' Compensation Board affirmed on all three issues raised, including the ALJ's interest award.  Consistent with its earlier opinions, the Board held that the legislature did not express or imply its desire that the 2017 amendment of KRS 342.040 reducing the interest rate from 12% to 6% be applied retroactively.  On Warrior Coal's further appeal to the Court of Appeals, the employer prevailed on a single issue, the applicable interest rate.  Relying on recently-decided *Holcim v. Swinford*, 581 S.W.3d 37 (Ky. 2019), the Court of Appeals found that Martin's entire award is subject to the 6% interest rate. Martin now appeals to this Court, seeking reversal of the appellate court's ruling on that issue and reinstatement of interest as awarded by the ALJ.

## ANALYSIS

Martin argues that KRS 342.040, as amended, is not expressly retroactive and therefore prior decisions of this Court regarding workers' compensation benefits and general rules of statutory construction apply. Citing *Campbell v. Young*, 478 S.W.2d 712 (Ky. 1972), Martin maintains that since interest is owed from the date it is due until it is paid, the 12% interest rate in effect at the time of his compensable injuries applies to his award,[3] regardless of when an award by an ALJ is rendered.  He also contends that as reflected in KRS 446.080(3) and *Commonwealth Department of Agriculture v.*

---

[3] To be clear, Martin does not maintain that the entirety of his award is subject to 12% interest but rather, as the ALJ ruled, those portions attributable to the period prior to June 29, 2017.

3

*Vinson*, 30 S.W.3d 162, 168 (Ky. 2000), the general rule is that a statute making a substantive change in the law, like the amendment at issue, is to be strictly construed and given prospective effect. As to *Holcim*, Martin insists that case is distinguishable from his case because it makes no mention of any retroactive application of KRS 342.040.

Legislative intent is paramount when construing a statute. *Univ. of Cumberlands v. Pennybacker*, 308 S.W.3d 668, 684 (Ky. 2010) ("our first guiding principle in statutory construction is to ascertain and effectuate legislative intent"). Thus, we first consider whether the General Assembly clearly manifested its intent to apply the 6% interest rate in newly revised KRS 342.040 to benefits due and unpaid prior to its effective date. As in *Holcim*, we are confronted with language in the legislative act – specifically in Section 5 of 2017 Kentucky Acts Chapter 17 – that was not subsequently codified in the statute but rather placed within a Legislative Research Commission (LRC) Note.

## I. THE GENERAL ASSEMBLY'S INTENT IS CONTROLLING

Elementary considerations of fairness support the longstanding "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)). In Kentucky, this principle is embodied in KRS 446.080(3) which provides that "[n]o statute shall be construed to be retroactive, unless expressly so declared." The general rule in Kentucky is that "the amended version of a statute [is not] applied retroactively

4

to events which occurred prior to the effective date of the amendment unless the amendment expressly provides for retroactive application." *Vinson*, 30 S.W.3d at 168 (citing KRS 446.080(3) and *Kentucky Indus. Util. Customers, Inc. v. Kentucky Utils. Co.*, 983 S.W.2d 493 (Ky. 1998)). However, as explained in *Peabody Coal Co. v. Gossett*, 819 S.W.2d 33, 36 (Ky. 1991), a case addressing a statutory change in the standard for reopening a workers' compensation award, a statute does not operate "retroactively" just because it is applied in a case pending before the statute's enactment. *Accord Landgraf*, 511 U.S. at 269. Kentucky law differentiates between a statute which operates "retroactively" and a statute with a temporal reach predating its enactment.

In *Peabody*, we said:

A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or which creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. Therefore, despite the existence of some contrary authority, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes. In this connection it has been said that a remedial statute must be so construed as to make it effect the evident purpose for which it was enacted, so that if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied although the statute does not in terms so direct, unless to do so would impair some vested right or violate some constitutional guaranty. 73 Am.Jur.2d *Statutes* § 354 (1974). (Footnotes omitted.)

819 S.W.2d at 36.

The *Peabody* Court thus concluded that "since the 1987 amendment to KRS 342.125 is remedial, it does not come within the legal conception of a retrospective law nor the general rule against the retrospective operation of statutes." *Id.*

Having identified the amendment to KRS 342.040(1) as substantive, Martin relies on the presumption against retroactivity of substantive laws. Citing *Hamilton v. Desparado Fuels, Inc.*, 868 S.W.2d 95, 97 (Ky. 1993), and *Vinson*, 30 S.W.3d at 168, he argues that the clear declaration in KRS 446.080(3) against retroactivity should be strictly construed, particularly when dealing with substantive legislative amendments which are presumed to be prospective, as compared to remedial amendments which do not fall within the general rule against retroactive application. Toward that end, Martin also cites *Stovall v. Couch*, 658 S.W.2d 437 (Ky. App. 1983), a case in which the Court of Appeals did not apply an amended interest rate "retroactively," as support for his proposition that an amendment of interest rates on unpaid benefits is substantive legislation. However, even a cursory reading of *Stovall* reveals that it did not address whether the interest rate amendment at issue was substantive or remedial.

*Stovall* dealt with the 1982 amendment of the KRS 342.040 interest rate on unpaid income benefit installments, increasing it from 6% to 12%, the reverse of the interest rate change before us in the 2017 amendment. The Workers' Compensation Board awarded Couch interest at the rate of 12% on all due and unpaid installments. *Id.* at 437. Before the Court of Appeals, the

6

employer and Stovall (Special Fund) argued that application of the 12% interest rate on *all* due and unpaid benefits was an improper retroactive application of the amendment. *Id.* Agreeing with that proposition, the Court of Appeals upheld the application of the 6% rate until the amendment's effective date and application of the 12% rate thereafter. *Id.* at 438. The appellate court reached that conclusion based on the statute's plain wording – the interest rate increase "on each installment from the time it is due until paid," went into effect July 15, 1982 – which indicated nothing beyond a prospective application. *Id.* at 437-38.[4] In the current context, we view *Stovall* as a case applying the general rule that an amended statute is ordinarily interpreted as

---

[4] In *Stovall*, the Court of Appeals relied on *Campbell v. Young*, 478 S.W.2d at 713 (Ky. 1972). *Stovall* described *Campbell* as holding that interest was due from the date the claim for compensation was filed. 658 S.W.2d at 438. *Campbell* instead holds that interest was due according to KRS 342.040's plain language. *See* 478 S.W.2d at 713. KRS 342.040 then provided:

> Time of payment of compensation. Except as provided in KRS 342.020 and 342.030 no compensation shall be payable for the first seven days of disability unless disability continues for a period of more than two weeks in which case compensation shall be allowed from the first day of disability. All compensation shall be payable on the regular pay day of the employer, commencing with the first regular pay day after seven days after the injury or disability resulting from an occupational disease, with interest at the rate of six percent per annum on each installment from the time it is due until paid.

*Id.* The *Campbell* Court, quoting *Maryland Casualty Co. v. Reeves*, 70 S.W.2d 992 (Ky. 1934), emphasized that the statute "states in clear and unambiguous language that all compensation shall be payable with interest at the rate of 6 per cent per annum on each installment from the time it is due until paid" and reversed the judgment upholding the Board's decision that interest was due from the date the claim was filed. *Id.*

*Stovall* and *Campbell* have only recently been cited in other unpublished Court of Appeals cases also addressing the 2017 amendment of KRS 432.040. Given the language in Section 5 of 2017 Kentucky Acts Chapter 17, resort to *Stovall* and *Campbell* is unnecessary.

7

operating prospectively in the absence of language which "clearly manifests [the legislature's] intent" to the contrary. *See Vinson*, 30 S.W.3d at 168.

While Martin acknowledges this general rule as expressed in KRS 446.080(3), he overlooks the fundamental principle of statutory interpretation embodied in the rule, namely that when the General Assembly clearly expresses its intent, that intent is controlling. *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017); *Bell v. Bell*, 423 S.W.3d 219, 223 (Ky. 2014). Thus, no matter the context – regardless of whether we are addressing substantive or remedial legislative amendments – when the General Assembly clearly states legislation is to have retroactive effect or otherwise prescribes its temporal scope or reach, we give effect to the intent of the General Assembly, *see Vinson*, 30 S.W.3d at 168; *Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152, 166–67 (Ky. 2009), unless to do so would impair some vested right or violate some constitutional guaranty, *see Peabody*, 819 S.W.2d at 36; *Kentucky Ins. Guar. Ass'n v. Jeffers ex rel. Jeffers*, 13 S.W.3d 606, 610 (Ky. 2000).

> **When a case implicates a . . . statute enacted after the events in suit, the court's first task is to determine whether [the General Assembly] has expressly prescribed the statute's proper reach. If [the General Assembly] has done so, of course, there is no need to resort to judicial default rules**. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear [legislative] intent favoring such a result.

*Landgraf*, 511 U.S. at 280 (emphasis added); *see Thompson*, 300 S.W.3d at 167 ("Optimally, the General Assembly will state clearly that it intends legislation to have retroactive effect, . . . . [When there is] a failure to state [so] explicitly . . . a reviewing court may discern the General Assembly's intent for legislation to have a retroactive effect by using traditional tools for statutory interpretation.").

Here, the General Assembly unambiguously expressed the temporal reach of its amendment of the interest rate in KRS 342.040. As Warrior Coal argues and as reflected in an LRC Note to the statute, 2017 Kentucky Acts Chapter 17, Section 5 provides that "[KRS 342.040, as amended, shall] apply to all [workers'] compensation orders entered or settlements approved on or after June 29, 2017, the effective date of that Act."[5] By applying the amendment to orders and settlements approved on or after the Act's effective date, the General Assembly made clear that the date of an award or settlement is controlling, even though that award may encompass events which occurred before the statute was amended and made effective. Notably, this legislative statement regarding temporal application is not codified in the statute itself in the official

---

[5] Because a workers' compensation award does not create a vested right until it is final, this reference is to final awards, following exhaustion of all appeals, if any are taken. *See Johnson v. Gans Furniture Indus., Inc.*, 114 S.W.3d 850, 855 (Ky. 2003) ("Final workers' compensation awards are subject to the principles of the finality of judgments . . . ."); *Hampton v. Flav-O-Rich Dairies*, 489 S.W.3d 230, 234 (Ky. 2016) ("[A] Board opinion is final if it divests a party of a vested right by setting aside an ALJ's award or by authorizing or requiring the entry of a different award on remand. . . . When the Board vacate[s] the ALJ's opinion, that opinion cease[s] to exist, and [the claimant] [is] divested of his . . . award."); 803 Kentucky Administrative Regulation 25:010, § 25 ("Time for Payment of Benefits in Litigated Claims. (1) If a disputed claim is litigated and an opinion, order, or award is entered awarding benefits to a claimant and no appeal is taken that prevents finality of the opinion, order, or award, payment shall be made in accordance with this subsection.").

version of the Kentucky Revised Statutes, but rather appears in an uncodified LRC Note that follows the text of the statute. We must determine the effect of this uncodified legislative expression, a task we undertook in a similar case approximately eighteen months ago, *Holcim v. Swinford.*

## II. AS IN *HOLCIM*, THE EXPRESS LEGISLATIVE INTENT MUST BE GIVEN EFFECT EVEN IF IT IS NOT CODIFIED IN THE STATUTE

In *Holcim*, 581 S.W.3d 37, this Court addressed the effect of a Legislative Research Commission Note that embodied the specific language of one section of a Kentucky Act, legislated language clearly expressing the temporal reach of an amendment to a workers' compensation statute but not codified within the official version of the Kentucky Revised Statutes. In short, it presented the same legislative language scenario that we confront in this case. Before turning to *Holcim* and its precedential value, we look first at the statute at issue in this case.

> As amended in 2017, KRS 432.040(1) states in pertinent part:
>
> Except as provided in KRS 342.020, no income benefits shall be payable for the first seven (7) days of disability unless disability continues for a period of more than two (2) weeks, in which case income benefits shall be allowed from the first day of disability. All income benefits shall be payable on the regular payday of the employer, commencing with the first regular payday after seven (7) days after the injury or disability resulting from an occupational disease, **with interest at the rate of six percent (6%) per annum on each installment from the time it is due until paid**, except that if the administrative law judge determines that a denial, delay, or termination in the payment of income benefits was without

10

reasonable foundation, the rate of interest shall be twelve percent (12%)[6] per annum.[7]

(Emphasis added.)

This version of KRS 342.040(1) was the result of 2017 Kentucky Acts Chapter 17, Section 2, which established the 6% interest rate on income benefit payments, a reduction from the prior interest rate of 12%. In Section 5 of that same Act the General Assembly provided: "Section 2 of this Act shall apply to all [workers'] compensation orders entered or settlements approved on or after the effective date of this Act." As noted, the directive in Section 5, rather than being codified within the KRS 342.040 text, is stated in a Legislative Research Commission Note appearing below the official version of the statute. The LRC Note reads: "Legislative Research Commission Note (6-29-17): 2017 Ky. Acts ch. 17, sec. 5 provided that amendments made to this statute in 2017 Ky. Acts ch. 17, sec. 2 apply to all [workers'] compensation

---

[6] Along with the interest rate amendment at issue in this case, 2017 Kentucky Acts Chapter 17, Section 2 also created one other amendment within KRS 432.040(1) by changing this interest rate, previously 18%, to 12%.

[7] KRS 432.040(1)'s second sentence was amended in 2018. As amended, its second sentence currently reads:

> All income benefits shall be payable on the regular payday of the employer, commencing with the first regular payday after seven (7) days after the injury or disability resulting from an occupational disease, with interest at the rate of six percent (6%) per annum on each installment from the time it is due until paid, except that if the administrative law judge determines that the delay was caused by the employee, then no interest shall be due, or determines that a denial, delay, or termination in the payment of income benefits was without reasonable foundation, then the rate of interest shall be twelve percent (12%) per annum.

11

orders entered or settlements approved on or after June 29, 2017, the effective date of that Act."

In *Holcim*, we considered a similar situation. There we addressed the amendment of a different provision of the Workers' Compensation Act, the statute regarding termination of a worker's income benefits at age 70 or four years after injury or last exposure, whichever last occurs. As amended in 2018, KRS 342.730(4) reads:

> All income benefits payable pursuant to this chapter shall terminate as of the date upon which the employee reaches the age of seventy (70), or four (4) years after the employee's injury or last exposure, whichever last occurs. In like manner all income benefits payable pursuant to this chapter to spouses and dependents shall terminate as of the date upon which the employee would have reached age seventy (70) or four (4) years after the employee's date of injury or date of last exposure, whichever last occurs.

*Holcim*, 581 S.W.3d at 42.

Although the statute on its face says nothing regarding retroactive or prospective application, the Legislative Research Commission Note appearing below the official version of KRS 342.730(4) clearly does:

> This statute was amended in Section 13 of 2018 Ky. Acts ch. 40. . . . Subsection (3) of Section 20 of that Act reads, "Subsection (4) of Section 13 of this Act shall apply prospectively and retroactively to all claims: (a) For which the date of injury or date of last exposure occurred on or after December 12, 1996; and (b) That have not been fully and finally adjudicated, or are in the appellate process, or for which time to file an appeal has not lapsed, as of the effective date of this Act.

*Id.* at 43.

12

In *Holcim*, this Court concluded that pursuant to KRS 7.131(3), the Legislative Research Commission Note's content regarding the temporal reach of KRS 342.730(4) did not need to be codified within the official version of the statute to be effective because the language in the Act regarding retroactivity is temporary, i.e., it applies solely to cases which "have not been fully and finally adjudicated, or are in the appellate process, or for which time to file an appeal has not lapsed, as of the effective date of [the] Act." *Id.* at 44. The statute we relied on, KRS 7.131(3), states that "[i]n maintaining the official version of the Kentucky Revised Statutes, the Commission may omit all laws of a private, local, or temporary nature." Consequently, the unanimous *Holcim* Court concluded that the General Assembly had expressly authorized what had occurred, the non-codification of a statement of legislative intent regarding the temporal reach of the statute because that language had only temporary significance. With the passage of time – a relatively brief period of time at that – the language would become surplusage and unnecessary. Nonetheless, the legislature had expressed its intent and that intent was properly preserved in the accompanying LRC Note.

Finding *Holcim* instructive in this case, the Court of Appeals concluded that the General Assembly's express language in the non-codified section of the 2017 Kentucky Act clearly stated its intention with respect to the amendment of KRS 342.730. In short, the amendment applies to all awards entered after the statute's June 29, 2017 effective date, regardless of the period for which the income benefits were payable, rendering Martin's entire income benefits

13

award subject to the amended 6% interest rate. Martin attempts to distinguish *Holcim* as a case dealing only with the retroactive effect of a statute controlling duration of income benefit awards, and thus having nothing to say about interest or the law that governs interest on such awards. While Martin would understandably prefer not to dwell on *Holcim*'s analysis regarding the effect of non-codified language taken directly from a legislative act and preserved in an LRC Note, we find that analysis equally compelling here.

As explained in *Holcim*, if language is properly characterized as a permanent law of a general nature then under KRS 7.131(2) it must be codified in the official version of the Kentucky Revised Statutes to be effective under KRS 7.138(2). *Id.* On the other hand, under KRS 7.131(3), if the language is properly characterized as a law of a temporary nature, there is no requirement that the language must be codified in the official version of the Kentucky Revised Statutes in order to be relied on. *Id.* The non-codified language at issue in *Holcim*, clarifying that the amendment applied to cases which "have not been fully and finally adjudicated, or are in the appellate process, or for which time to file an appeal has not lapsed, as of the effective date of [the] Act," was plainly temporary. *Id.* We explained:

> For any new injuries and claims, the retroactivity of the Act will not be an issue. Therefore, the language is only relevant to a particular time frame and once cases arising during that time frame are fully adjudicated, it will be unnecessary. Therefore, due to the temporary nature of the language regarding retroactivity in the Act, codification was not required.

*Id.*

14

The non-codified language at issue here is similar in nature. The language set forth in Section 5 of the 2017 Kentucky Act and repeated almost verbatim in the LRC Note is relevant to those cases in which compensable injuries occurred prior to the Act's effective date but for which orders are entered and settlements are approved on or after June 29, 2017. For compensable injuries occurring on or after June 29, 2017, this "temporal scope" language is not necessary. Because of the temporary nature of the language, codification was not required to give it effect. Stated broadly, if the General Assembly passes a bill with clear language regarding the bill's temporal reach, the legislature has expressed its intent regarding retroactive/prospective application regardless of whether that clear language finds its way into the actual statute. Legislative intent is legislative intent. Based on the General Assembly's non-codified but express language regarding its intent with respect to the 6% interest rate set forth in the 2017 amendment, we conclude that the entirety of Martin's benefit award is subject to the amended 6% interest rate.

## CONCLUSION

For the reasons stated above, we affirm the Court of Appeals.

Minton, C.J.; Conley, Keller, Nickell, and VanMeter, JJ., concur. Lambert, J., dissents without separate opinion.

15

COUNSEL FOR APPELLANT:

McKinnley Morgan
Morgan Collins Yeast & Salyer


COUNSEL FOR APPELLEE,
WARRIOR COAL LLC:

Morgan Jenkins Fitzhugh
Hassman & Fitzhugh, PLLC


ADMINISTRATIVE LAW JUDGE:

Jefferson Vimont Layson, III


WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Chairman